DORETHA WINFIELD

v.

COMMONWEALTH OF VIRGINIA

No. 0959-88-2

Decided April 30, 1991*

---

* Petition for rehearing granted June 10, 1991.

## COUNSEL

Michael Morchower (Sharon E. Gregory; Elizabeth Dashiell Scher; Morchower, Luxton & Whaley, on brief), for appellant.

Birdie H. Jamison, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## OPINION

**WILLIS, J.**—In this appeal, we consider whether the trial court erred in finding that the Commonwealth's Attorney satisfied the requirements of *Batson v. Kentucky*, 476 U.S. 79 (1986), in explaining his exercise of peremptory strikes against four black veniremen. We find no error and affirm.

Doretha Winfield, a black woman, was charged with distribution of more than one-half ounce but not more than five pounds of marijuana. She elected to be tried by jury. The venire consisted of eleven white persons and nine black persons, all determined upon *voir dire* to be free from exception. Exercising his peremptory challenges, the Commonwealth's Attorney struck four black women: Reba Edmonds, Polly S. Dunn, Corine Elizabeth Lee, and Rose Mary Massenburg. The defense struck three white men and one white woman. The resulting panel included seven whites and five blacks. After the stricken veniremen were discharged and the panel was sworn, defense counsel moved for a mistrial on the ground that the Commonwealth's Attorney's actions in striking

the jury were racially discriminatory to the defendant.[1] The Commonwealth's Attorney explained that he struck Reba Edmonds because she acknowledged that she knew the defendant. He said that he struck Polly Dunn, a retired domestic worker, because "her education might limit her ability to understand completely what was going on." He stated that he struck Rose Massenburg, a cosmetologist, and Corine Lee, a retired Fort Lee laundry worker, for the same reason as Ms. Dunn. The Commonwealth's Attorney asserted that his decision to strike Ms. Dunn, Ms. Massenburg, and Ms. Lee was based on the personal information set forth in the list describing the venire provided to counsel by the clerk's office. That list, which he presented to the trial court for its inspection, contained no racial identification with respect to any venireman. The Commonwealth's Attorney stated that he decided to strike Ms. Dunn, Ms. Massenburg, and Ms. Lee before he had any knowledge of their race, and that their race was not a factor in that determination. The trial court found that the Commonwealth took its strikes for racially neutral reasons. It denied the motion for a mistrial.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

A defendant is not constitutionally entitled to be tried by members of his own race. However, a defendant does have a constitutional right to be tried by a jury selected pursuant to racially neutral and nondiscriminatory guidelines. *Gray v. Commonwealth*, 233 Va. 313, 335, 356 S.E.2d 157, 169, *cert. denied*, 484 U.S. 873 (1987).

The equal protection clause of the fourteenth amendment guarantees that the State will not exclude members of the defendant's race from the jury on account of race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). In *Batson*, the Supreme Court of the United States set forth criteria for determining whether or not purposeful

---

[1] Code § 8.01-352 provides that an objection specifically pointing out the irregularity in the impaneling of jurors or an objection to any juror on account of legal disability may be made after the jury is sworn only with leave of court. The trial court entertained and ruled on the motion. Thus, we consider that it was made with leave of court and that we need not consider its timeliness.

discrimination in the jury selection process has been shown. To establish a *prima facie* case:

> [T]he defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.

> Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate."

> Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

> * * *

> Once the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. . . . [T]he prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. But the prosecutor may not rebut the defendant's *prima facie* case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption — or his intuitive judgment — that they would be partial to the defendant because of their shared race. . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in making individual selections."
> . . . . The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Id.* at 96-98 (citations and footnote omitted).

We consider first whether the defendant made out a *prima facie* case of purposeful discrimination.

The Commonwealth argues that the record does not show the defendant's race, and that there is no way that we can determine on the record that she is a member of a cognizable racial group.

We will not accept this argument and will not permit our decision to turn upon it. The defendant was before the trial court in person, and no doubt her race was apparent. Throughout this litigation, both in the trial court and on appeal, the parties have recognized that the defendant is a member of the black race. For purposes of this decision, we find that fact to be established. The record shows that the prosecutor exercised his peremptory challenges to remove from the venire members of the defendant's race.

The second element of a *prima facie* showing is the recognition that a system affording peremptory challenges to the prosecution is susceptible of abuse permitting "those to discriminate who are of a mind to discriminate."

The final element of a *prima facie* showing is that the facts and any other relevant circumstances raise an inference that the prosecutor used his peremptory strikes to exclude veniremen from the jury on account of their race. The record shows that out of a venire of eleven whites and nine blacks the prosecutor exercised all four of his peremptory strikes against black veniremen. This fact will support an inference that the prosecutor used that method to exclude veniremen from the petit jury on account of their race.

We find that the record in this case makes out a *prima facie* showing of purposeful discrimination on the part of the Commonwealth's Attorney in the jury selection process. We turn now to the second prong of the inquiry, the required explanation offered by the prosecutor in support of his peremptory strikes.

The prosecutor struck Reba Edmunds because she acknowledged that she knew the defendant. The appellant does not challenge this, and properly so. Even though personal acquaintance may not generate an actual bias, it frequently and logically imposes an embarrassment which may well make it difficult for a juror to serve impartially. The Commonwealth's Attorney explained that he struck Polly Dunn, Rose Massenburg, and Corine Lee because he believed them to be of limited education and thought that this would hamper their capacity to serve satisfactorily as jurors.

In *Taitano v. Commonwealth*, 4 Va. App. 342, 358 S.E.2d 590 (1987), we upheld the trial court's acceptance of the prosecutor's explanation for why he had used his peremptory strikes to elimi-

nate four black males from the jury panel. The prosecutor explained that two of the men lived in high crime areas and were approximately the same age as the defendant. A third lived approximately eight blocks from where the defendant was arrested, was about the same age as the defendant, had been struck from a jury the week before, and came to court that day dressed as though he were going to work at the shipyard. The fourth man lived less than two blocks from where the defendant was arrested and near members of the defendant's family. Sustaining the trial court's conclusion that the Commonwealth's strikes were not racially motivated, we said:

> In the instant case, the Commonwealth attorney articulated clear and specific non-racial reasons for striking each juror. With respect to each of the jurors struck, the Commonwealth attorney stated that he was concerned because they lived near the defendant or near the scene of the crime, or in areas of "high crime" generally. The Commonwealth attorney also considered the age, dress, and demeanor of the prospective jurors in exercising his peremptory challenges. These specific, neutral reasons are sufficient to rebut a *prima facie* case of purposeful discrimination. The Commonwealth attorney did not simply make general assertions denying any discriminatory motive. The jury panel selected consisted of seven white jurors and five black jurors. . . . We find no error in the trial court's holding that the peremptory challenges were not racially motivated.

*Id.* at 347, 358 S.E.2d at 592-93 (citations omitted). The explanations related by the Commonwealth's Attorney in *Taitano*, concerning place of residence, dress and demeanor could have been construed to imply considerations of race. However, we upheld the trial court's exercise of judgment in observing the parties, considering the Commonwealth's Attorney's explanation, and in determining that the decisions to strike were racially neutral.

In *Jackson v. Commonwealth*, 8 Va. App. 176, 380 S.E.2d 1 (1989), we found that the Commonwealth had failed to meet its burden of rebutting the *Batson* showing. In *Jackson*, the Commonwealth's Attorney struck three black veniremen. When called upon to explain, he initially stated "[t]he Commonwealth could have struck even more blacks." He further stated that "[r]ace had

absolutely nothing to do with any [strikes]." Finally, after prompting from the court, the Commonwealth's Attorney stated that he had struck one juror "who looked to be about the same age as the defendant" and "[t]he addresses, Judge, was [the] next consideration on those other two [jurors]." The trial judge made no findings concerning the relative ages and addresses of the veniremen and the defendant or as to why ages and addresses were relevant to juror qualification. We held that the record in *Jackson* did "not contain a factual basis to support the Commonwealth's attorney's explanations and the trial judge's conclusion." *Id.* at 187, 380 S.E.2d at 7.

The Commonwealth's Attorney's representation to the trial judge in this case went beyond a mere denial that his peremptory strikes were racially motivated. He stated that his decision to strike veniremen Dunn, Lee, and Massenburg was made before he was aware of their racial identity. He stated that his decision was based only on the information shown on the court's venire list, which set forth no information or suggestion as to race. He demonstrated this by showing that list to the trial judge. This explanation went beyond a mere denial "that he had a discriminatory motive."

█ Based on the information shown on the court's venire list, the Commonwealth's Attorney concluded that the veniremen Dunn, Massenburg, and Lee probably possessed limited education. This conclusion might not have been correct, but it is consistent with common experience. His concern that their limited education might impair their ability to serve satisfactorily as jurors was proper. The appellant argues that the case was not complex and that she put on no evidence. This argument is retrospective. The Commonwealth's Attorney was required to exercise his strikes at the beginning of the case, before it developed. His explanation for those strikes need not rise to the level justifying exercise of a challenge for cause. *Batson*, 476 U.S. at 97. It need only be racially neutral and addressed to the particular case. The Commonwealth's Attorney's explanation satisfies that standard.

In *United States v. Allen*, 666 F. Supp. 847 (E.D. Va. 1987), involving black defendants, the prosecutor explained that he had exercised peremptory strikes against black veniremen because he believed that their limited education cast doubt on their ability to serve effectively and satisfactorily as jurors. In upholding this ex-

ercise of peremptory strikes, the District Court said: "The court accepts as reasonable the prosecutor's desire to impanel jurors with the soundest [education] possible." *Id.* at 852. This ruling was upheld on appeal, *sub nom. United States v. Harrell*, 847 F.2d 138 (4th Cir. 1988).

*Batson* places upon the trial courts the burden of weighing the explanations tendered by prosecutors justifying their use of peremptory strikes, assessing their genuineness, and determining whether they bespeak discriminatory motives. The explanations are typically offered under the pressures of the courtroom. The trial judges, in weighing them, have the opportunity of observing their proponents, of hearing rebuttal by the defense, and of considering the general circumstances of the case. On appeal, we should apply the accepted standards of review, and should uphold the trial court's decision if it is supported by credible evidence. Such is the case here. The judgment of the trial court denying the motion for a mistrial is affirmed.

*Affirmed.*

Cole, J., concurred.

Coleman, J., dissenting.

*Batson v. Kentucky*, 476 U.S. 79 (1986), requires that once a *prima facie* case of purposeful discrimination in jury selection has been established, "[t]he prosecutor . . . must articulate a neutral explanation related to the particular case to be tried." *Id.* at 98. Giving the Commonwealth the benefit of the doubt, which the trial court apparently did, I accept the Commonwealth's attorney's explanation, that prior to trial, he identified those persons on the jury panel, presumably from the employment information on the jury list, who from common experience *probably* possessed limited education. However, I fail to see that information rebutted the presumption of racial discrimination and established a race neutral explanation specifically related to Winfield's particular prosecution for peremptorily striking three of the four black women from the jury. The jury list contained a large number of men and women whose occupations suggested that they also *probably* had no advanced formal education. Nevertheless, the Commonwealth struck four black women, jurors of the same race and gender as the defendant. Here, the evidence merely established

that the strikes were made from among a larger group of individuals with similar disqualifying characteristics. The prosecutor's explanation did not address why those four black women were struck from among that larger group. *Batson* prohibits such practice, and the Commonwealth's attorney's explanation does not rebut the presumption that he used race as a basis for exercising his peremptive strikes.

Furthermore, I believe the trial court, and this court, should reject as not supported by credible evidence the Commonwealth's attorney's assertion that he struck the jurors because their "education might limit [their] ability to understand completely what was going on." *See United States v. Allen*, 666 F. Supp. 847, 854 (E.D. Va. 1987). First, the employment information did not, in fact, disclose the educational achievement of the jurors. Second, if education were a relevant consideration for the Commonwealth's attorney, he could have inquired about education on *voir dire*. Third, the expressed concern that the jurors' educational achievement might prevent them from understanding the issues at trial is, in my judgment, difficult to maintain in a prosecution for distributing marijuana. For these reasons, I believe the tendered explanation is neither supported by the record nor sufficient to rebut the presumption that race was the factor in removing the jurors.

The Commonwealth's attorney stated that he drew his conclusions regarding the educational achievement of the stricken jurors from the court's venire list. The list of the females on the venire, excluding juror Edmunds who was removed because she was acquainted with the defendant, included two black women, one employed in an unspecified capacity with the Virginia Eye Institute, the other employed as an interpreter with the tourism department, and eight white females, seven of whom ultimately served on the jury. None of the white females were peremptorily struck by the Commonwealth's attorney. Of the seven white females who served on the jury, one was a retiree from an unspecified job with Babcock & Wilcox, another was an account clerk with Allied Chemical, one was retired from an unspecified job with SRMC, and the others were a housewife, a woman employed in an unspecified job with Anderson School Annex, a nurse, and an assistant manager of Hickory Hill Mobile Homes. Except for the nurse, the job descriptions of these women, as well as most of the men, were so general and non-specific that they provided counsel no better indi-

cator of the educational level of the prospective jurors, in most instances, than did the job descriptions of the black cosmetologist, the retired domestic, and the black woman who was retired from Fort Lee Laundry, all of whom were struck. Admittedly, counsel may have personally known something about the educational achievement of these jurors and job requirements not appearing of record. However, other than the nurse, the employment information for the white women, in nearly every instance, provided no basis from which the Commonwealth's attorney could have concluded that the white jurors probably were better educated than the three black women he removed for that reason.

At most, the black females peremptorily struck were part of a group, including perhaps as many as seven of the white females, who the prosecutor might have been able to identify as subject to a peremptory strike on the basis that their "education might limit [their] ability to understand completely what was going on." Again, giving the Commonwealth's attorney the benefit of the doubt that he identified beforehand those who probably had limited education without regard to race, the proportion of that group which would have been white was sufficiently large that a random striking of that group, without regard to race, would not have resulted in all black women and no whites being deleted. If the Commonwealth's attorney identified beforehand by employment all the women jurors who may have had limited educational attainment, only race remains to distinguish those struck from those who were left on the panel. The Commonwealth's attorney's explanation did not overcome the presumption that he based three of his peremptory challenges on race. Thus, I would reverse this case and require that it be retried because, in my view, the jury was selected in violation of *Batson v. Kentucky*.