## Richmond

EDWARD LEE BARKSDALE

v.

COMMONWEALTH OF VIRGINIA

No. 1989-90-1

Decided December 14, 1993

457

COUNSEL

William M. McKee (Zoby & Broccoletti, P.C., on brief), for appellant.

Kathleen B. Martin, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

## UPON A REHEARING EN BANC

OPINION

**BRAY, J.**—Edward Lee Barksdale (defendant) was convicted by a jury for possession of cocaine with the intent to distribute and possession of a firearm while in possession of cocaine. He complains on appeal (1) that the prosecutor unconstitutionally exercised peremptory challenges to remove black veniremen from the jury panel, and (2) that the jury recommended a sentence not authorized by statute. We disagree and affirm the convictions.

Because the assigned errors relate only to procedural aspects of the proceedings below, we recite only those facts material to a review of such issues.

During jury selection, the prosecutor peremptorily struck two black veniremen from the panel,[1] and defendant moved that the prosecutor "be required . . . to state his grounds" for these challenges. However, before the trial judge ruled on this motion, the prosecutor explained that he was "primarily looking for younger people," "jurors who appeared not to be homeowners or people with not as big [a stake] in the community as other people." In response, defendant acknowledged that these reasons "certainly . . . would appear to be rationally mutual [sic]," adding that "a number of fairly young looking people . . . were not struck" from the panel. Defendant offered no further argument or evidence on the issue, the motion was overruled, and the court proceeded with trial.

The jury convicted defendant of both crimes, recommending sentences of twenty years and a $35,000 fine for the cocaine offense and two years and a $1,000 fine on the firearm charge, and was "excused from the courtroom."

On defendant's motion, sentencing was delayed pending the preparation and consideration of a presentence report. Before the proceedings adjourned, however, the trial judge noted that the recommended sentence on the firearm offense was "not in compliance" with Code § 18.2-308.4,[2] and defendant promptly moved "to set aside the verdict." The court overruled the motion and imposed the prison terms recommended on both offenses but suspended the related fines.

■ We first address the jury selection issue. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court reaffirmed the long established principle that a "'State's purposeful or deliberate denial [to persons] on account of race of participation as jurors . . . violates the Equal Protection Clause.'" *Id.* at 84 (quoting *Swain v. Alabama*, 380 U.S. 202, 203-04 (1965)). The Court recognized, however, that "interpretation" of its decision in *Swain* had "placed on defendants a crip-

[1] While the record suggests that three black veniremen may have been removed by the prosecutor, defendant only "noted . . . two" in argument before the trial court.
[2] On the date of this offense, Code § 18.2-308.4 classified the crime as a Class 6 felony, punishable pursuant to applicable Code § 18.2-10 by a specified "term of imprisonment of not . . . more than five years" *or* "confinement in jail for not more than twelve months and a fine of not more than $1,000.00, either or both."

pling burden" by requiring "proof of repeated striking of blacks [by prosecutors] over a number of cases . . . to establish a violation of the Equal Protection Clause" in the selection of a petit jury. *Id.* at 92. This "evidentiary formulation," which had rendered "prosecutors' peremptory challenges . . . largely immune from constitutional scrutiny," was expressly rejected by the *Batson* court "as inconsistent" with the proper "standards . . . for assessing a prima facie case under the Equal Protection Clause." *Id.* at 92-93.

In response, the Court concluded that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence" related to the "prosecutor's exercise of peremptory challenges at . . . trial" and identified a "combination of factors in the empaneling of the petit jury" which "raises the necessary inference" to defendant's "requisite showing" of such discrimination. *Id.* at 96. These criteria have been frequently referenced by this Court and need not be repeated here. Once a defendant "makes a prima facie showing" of deliberate discrimination, *Batson* requires "the State to come forward with a neutral explanation" of its strikes, "related to the particular case," after which the trial court "will have the duty to determine if the defendant has established purposeful discrimination" *vel non. Id.* at 97-98.

As a threshold issue, the Commonwealth argues that defendant did not establish a prima facie case of racial discrimination because the prosecutor undertook an explanation of the strikes before the trial judge addressed defendant's motion. However, this circumstance does not preclude our *Batson* review of the peremptory strikes. In *Faison v. Hudson*, 243 Va. 397, 417 S.E.2d 305 (1992), the Supreme Court found this procedural defect "was waived and became irrelevant" once the challenged party "undertook to articulate reasons for [a strike] without first raising the procedural issue" before the trial court. *Id.* at 402, 417 S.E.2d at 308; *see also Hernandez v. New York,* 500 U.S. 352, 359 (1991).

Guided by *Batson,* we next consider whether the prosecutor articulated a racially neutral explanation for the disputed strikes. *Hernandez,* 500 U.S. at 360. "In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Id.* at 359. If not, the "decisive question" before the trial judge in a *Batson* analysis becomes "whether counsel's race-neutral explanation for a

peremptory challenge should be believed," and, "once that has been settled, there seems nothing left to review." *Id.* at 365, 367.

A "trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal," *id.* at 364, which should be disturbed only if "clearly erroneous." *Id.* at 369; *Batson,* 476 U.S. at 98 n.21. Such "[d]eference to trial court findings . . . makes particular sense in this context" because "evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Hernandez,* 500 U.S. at 365 (citation omitted).

This view accords with the holding by a panel of this Court in *Winfield v. Commonwealth,* 12 Va. App. 446, 404 S.E.2d 398 (1991), *aff'd en banc,* 14 Va. App. 1049, 421 S.E.2d 468 (1992), and with *Wright v. Commonwealth,* 245 Va. 177, 427 S.E.2d 379 (1993). In *Winfield,* we acknowledged that "*Batson* places upon the trial courts the burden of weighing the explanations tendered by prosecutors justifying their use of peremptory strikes, assessing their genuineness, and determining whether they bespeak discriminatory motives." *Winfield,* 12 Va. App. at 453, 404 S.E.2d at 402. In discharging this responsibility, trial judges enjoy the unique "opportunity" of personal observation and familiarity with "the general circumstances of the case." *Id.* As a consequence, we must be controlled by the "accepted standards of review" and "uphold the trial court's decision if it is supported by credible evidence." *Id.*

In this instance, the prosecutor's "reasoning" for his peremptory strikes related to the ages of panel members. He explained that he "was primarily looking for younger people," "young jurors or jurors who appeared not to be homeowners or people with not as big as stakes [sic] in the community as other people." Defense counsel acknowledged that this explanation "certainly . . . would appear to be rationally mutual [sic]," commented that a "number of fairly young looking people . . . were not struck" and offered no further argument or evidence on the issue.[3] Implicitly finding the prosecutor's explana-

---

[3] *Batson* notes that the court has "explained the operation of prima facie burden of proof rules" in earlier decisions and cited *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Batson,* 476 U.S. at 94 n.18. There, the Court held that a litigant must be "afforded a fair opportunity" to *rebut* a facially valid explanation for the conduct in issue and "show that [the] stated reason . . . was in fact pretext." *McDonnell Douglas,* 411 U.S. at 804.

In *Broady v. Commonwealth,* 16 Va. App. 281, 284, 429 S.E.2d 468, 470 (1993), the prosecutor cited age as a basis for the challenged strikes. "[D]efense counsel protested" that white jurors "of the same apparent age . . . were not struck," and the ages of those jurors in issue were ascertained for the record. *Id.* at 285, 429 S.E.2d at 471.

tion credible, racially neutral and properly related to the case, the trial court overruled defendant's motion for a mistrial.

The trial judge presided at the proceedings, personally observed the entire jury panel, the challenged jurors and the composition of the trial jury, entertained the assurances and arguments of the prosecutor and was familiar with the case. Obvious human characteristics such as age, sex, race and demeanor are generally discernible and apparent to anyone present in the courtroom, including the trial judge, defendant and his counsel. Though not precisely recited in the record, such facts and circumstances attendant to jury selection presented an array of sensory perceptions to the trial judge which were relevant and appropriate considerations to a disposition of defendant's motion. *See Winfield,* 12 Va. App. at 449-50, 404 S.E.2d at 400.

The prosecutor's attribution of his peremptory strikes to age, an explanation previously approved by this Court, *Chambliss v. Commonwealth,* 9 Va. App. 267, 269-70, 386 S.E.2d 478, 479 (1989), was easily subject to the scrutiny of the court, as well as all assembled, and unchallenged by defense counsel. The record need not further reflect circumstances apparent in the proceedings and obviously before the court. Clearly, the evidence supported the prosecutor's explanation and, more importantly, the factual findings and conclusions of the trial court.

■ Defendant's contention that the impermissible sentence recommended by the jury rendered its entire verdict "illegal" is also without merit. Although the verdict incorrectly combined a penitentiary term and a fine, "[a] sentence in excess of one prescribed by law is not void *ab initio* . . ., but is good insofar as the power of the court extends, and is invalid only as to the excess." *Deagle v. Commonwealth,* 214 Va. 304, 305, 199 S.E.2d 509, 510-11 (1973); *see also Bell v. Commonwealth,* 11 Va. App. 530, 534, 399 S.E.2d 450, 453 (1991). Under such circumstances, the trial court may, as here, "impose a valid sentence in substitution for one that is void." *Deagle,* 214 Va. at 305, 199 S.E.2d at 510. Clearly, "the jury, if it had been required to choose between the two punishments it fixed, would have imposed the greater, the penitentiary sentence, and not the lesser, the fine." *Id.* at 306, 199 S.E.2d at 511. This was precisely the result effected by the trial court, without prejudice to defendant.

Accordingly, the trial court correctly overruled defendant's challenge to the petit jury and imposed a proper sentence on the jury verdict, and its judgments are affirmed.

*Affirmed.*

Moon, C.J., Baker, J., Barrow, J., Coleman, J., Willis, J., Elder, J., and Fitzpatrick, J., concurred.

Benton, J., with whom Koontz, J., joins, dissenting.

The Commonwealth attorney's explanation for striking the African-American jurors finds no support in the record. In addition, the trial judge approved the strikes without making any findings. This Court today again countenances "a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " *Batson v. Kentucky,* 476 U.S. 79, 96 (1986) (quoting *Avery v. Georgia,* 345 U.S. 559, 562 (1953)).

> By accepting as dispositive a finding by the trial judge that has no basis in fact or in the record, this Court, as it did in *Winfield* [*v. Commonwealth,* 12 Va. App. 446, 404 S.E.2d 398 (1991), *aff'd on reh'g en banc,* 14 Va. App. 1049, 421 S.E.2d 468 (1992)], has allowed the prosecutor to avoid the mandate of *Batson* by the use of a "discriminatory racial proxy." [*United States v.*] *Bishop,* 959 F. 2d 820, 826 (9th Cir. 1992). This Court again sends the message that in Virginia any reason will suffice to remove African-Americans from juries so long as the prosecutor does not admit on the record race as the reason and the trial judge blindly accepts the prosecutor's assertion that race was not the reason. That message contravenes the principle that "[i]n our heterogeneous society policy as well as constitutional considerations militate against the divisive assumption . . . that justice in a court of law may turn upon the pigmentation of skin [or] the accident of birth. . . ."

*Buck v. Commonwealth,* 16 Va. App. 551, 561, 432 S.E.2d 180, 186 (1993) (Benton, J., dissenting) (citations omitted). For the reasons that follow, I would hold that the trial judge erred.

During voir dire, the trial judge questioned the prospective jurors as required by Rule 3A:14. When given the opportunity to ask questions, the Commonwealth's attorney asked only the following question:

Do any of you have ethical or moral or philosophical convictions that would make it difficult if not impossible to send someone to the penitentiary if you find him guilty?

Later, explaining why he struck the African-American jurors, the prosecutor stated:

I wanted [to exclude] young jurors or jurors who appeared not to be homeowners or people with not as big [a stake] in the community as other people.

This explanation bears no relationship to the case that was to be tried. Nothing in this record draws the correlation between the ages of the jurors who were stricken and insensitivity to crime, between appearance of not being a homeowner and insensitivity to crime, or between appearance of not having a big stake in the community and insensitivity to crime.

Without the requirement that the race neutral explanation be "related to the particular case to be tried," a prosecutor with a less than fertile imagination can mouth reasons to exclude African-Americans from juries with precisely the type of explanation that this Court today approves. Strikes can now survive if they are used to exclude jurors who live on streets, as opposed to roads, places, or avenues; jurors who work in occupations that suggest manual labor; jurors who wear shirts that are colored; jurors who wear sport jackets; jurors who do not wear neck ties; jurors who wear dangling earrings; jurors who wear multicolored skirts; or jurors who wear brown shoes. The list is limited only by one's imagination.

*Winfield*, 14 Va. App. 1049, 1056-57, 421 S.E.2d 468, 473 (1992) (Benton, J., dissenting) (citation omitted). Today, this Court adds to the list African-American jurors who *appear* to be young, who *appear* not to be homeowners, and who *appear* to have not as big a stake in the community as other people. In so doing, this Court negates the Supreme Court's admonition that it is "impermissible for a prosecutor to use his challenges to exclude blacks from the jury 'for reasons wholly unrelated to the outcome of the particular case on trial' or to deny to blacks 'the same right and opportunity to participate in the administration of justice enjoyed by the white population.'" *Batson,* 476 U.S. at 91 (quoting *Swain v. Alabama*, 380 U.S. 202, 224 (1965)). The use of "discriminatory racial proxies" continues to be a sanctioned

jury selection practice in Virginia. *United States v. Bishop*, 959 F.2d 820, 826 (9th Cir. 1992).

Prominently absent from this record is any evidence concerning the ages, homeowning status, or community status of the prospective jurors. During voir dire, when the Commonwealth's attorney could have inquired as to those matters, if he deemed them relevant to service on the jury, he failed to do so. "[T]he utter failure to question . . . the challenged jurors on the grounds alleged for bias . . . renders the state's explanation immediately suspect." *State v. Slappy,* 522 So. 2d 18, 23 (Fla.), *cert. denied,* 487 U.S. 1219 (1988).

In *Wright v. Commonwealth,* 245 Va. 177, 427 S.E.2d 379 (1993), the Supreme Court of Virginia accepted the Commonwealth's peremptory strike of an African-American because the Commonwealth's attorney pointed to specific answers during voir dire that indicated that the prospective juror equivocated on whether she could follow the law. *Id.* at 187, 427 S.E.2d at 387. Although it is well-settled that a race-neutral reason need not rise to the level of a "for-cause" strike, *Batson,* 476 U.S. at 97, in *Wright* specific evidence in the record substantiated the prosecutor's suspicion that a juror ought to be struck. "She was hesitant to answer questions about the death penalty and she said that she would have to be absolutely sure before she could ever vote for the death penalty in any case," *Wright,* 245 Va. at 187, 427 S.E.2d at 387, and the trial judge made findings based on the evidence. *Id.*

Absent on this record is any attempt at fact finding by the trial judge. The trial judge had no information concerning the members of the jury panel. The jury list contained only the names of the persons on the jury panel; it did not contain addresses, homeowning status, ages, or indications of the prospective jurors' community status. Thus, the facts in the record were inadequate for the trial judge to determine whether the Commonwealth's attorney's reasons for striking the African-American jurors were factually accurate, a prerequisite to a finding of racial neutrality. *See Hernandez v. New York,* 500 U.S. 352, 359-60 (1991). Indeed, the trial judge ignored the absence of supporting facts, made no " 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available,' " *Batson,* 476 U.S. at 93 (quoting *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 266 (1977)), and, without making any findings, upheld the strikes.

The majority opinion overlooks these glaring flaws and states that "[o]bvious human characteristics such as age, sex, race and demeanor are generally discernible and apparent to anyone present in the courtroom, including the trial judge, defendant and his counsel." In making that observation, the majority ignores, however, the explicit comment of the defendant's counsel that, "I will note there were a number of fairly young looking people who were not struck." The trial judge said nothing in response to that objection and made no findings concerning whether the excluded jurors were young, whether the excluded prospective jurors "*appeared*" not to be homeowners, or whether the excluded prospective jurors had a lesser "*stake* in the community."

The use of surrogates, such as a "sensory perception" that a prospective juror appears youthful or does not give the appearance of a homeowner or has "not as big" a stake in the community, as a guise for removing African-Americans from juries, is pernicious. In upholding these strikes, the Court sends the message that pernicious conduct will be shielded if the prosecutor is astute enough to identify some inane, subjective characteristics that can be attributable only to the African-American venire members and use that as a surrogate for the strike. This Court should firmly assert that when the prosecutor offers a "wholly subjective . . . reason for a peremptory strike, it must be coupled with some form of objective verification before it can overcome the prima facie showing of discrimination." *State v. Cruz,* 857 P.2d 1249, 1253 (Ariz. 1993).

> [T]he protection of the constitutional guarantees that *Batson* recognizes requires the court to scrutinize . . . elusive, intangible, and easily contrived explanations with a healthy skepticism. Otherwise, [such explanations] will inevitably serve as a convenient talisman transforming *Batson's* protection against racial discrimination in jury selection into an illusion and the *Batson* hearing into an empty ceremony.

*Daniels v. State,* 768 S.W.2d 314, 317 (Tex. Ct. App. 1988).

Neither the Commonwealth's attorney nor the trial judge disclosed on the record the manner in which either of them made the determination that a person who is otherwise qualified as a juror is not old enough to be a responsible juror, is not a homeowner, or does not have a sufficient stake in the community to be a juror. It does not require any great leap of reasoning to understand how those "sensory perceptions," made by visual observation and without any facts, become a

surrogate for race for one of the mind to act upon bias and prejudice. The judgment made solely from a visual perusal that a person has a greater or lesser "stake" in the community or is a homeowner is nothing more than a stereotype engendered by race. Perceptions of nebulous, unseen qualities are often influenced by personal prejudices and cultural expectations. *See* Elizabeth F. Loftus, *Eyewitness Testimony* 36-42 (1979). "Through mental associations, African-Americans, their neighborhoods, crime and violence all become amalgamated, giving rise to tenacious stereotypes — innocent and unintentional perhaps, but stereotypes nonetheless." *Bishop*, 959 F.2d at 828.

> [I]f race stereotypes are the price for acceptance of a jury panel as fair, the price is too high to meet the standard of the Constitution. Other means exist for litigants to satisfy themselves of a jury's impartiality without using skin color as a test. If our society is to continue to progress as a multiracial democracy, it must recognize that the automatic invocation of race stereotypes retards that progress and causes continued hurt and injury. By the dispassionate analysis which is its special distinction, the law dispels fears and preconceptions respecting racial attitudes. The quiet rationality of the courtroom makes it an appropriate place to confront race-based fears or hostility by means other than the use of offensive stereotypes. Whether the race generality employed by litigants to challenge a potential juror derives from open hostility or from some hidden and unarticulated fear, neither motive entitles the litigant to cause injury to the excused juror. And if a litigant believes that the prospective juror harbors the same biases or instincts, the issue can be explored in a rational way that [is consistent] with respect for the dignity of persons, without the use of classifications based on ancestry or skin color.

*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 630-31 (1991).

However, because of the Court's ruling that the Commonwealth's attorney's "assertion of a wholly subjective impression of a juror's perceived qualities, without more, overcomes a prima facie showing of discrimination, *Batson* [has] easily and quickly become a dead letter." *State v. Cruz,* 857 P.2d 1249, 1253 (Ariz. 1993). This Court was confronted in this case with a choice between maintaining the appearance of fairness in the judicial system and upholding strikes of jurors who fail, by virtue of their "appearance," to fit the prosecutor's nebulous and subjective criteria. Today the majority sacrificed the former for the latter.

The mere explanation that youthful appearance was the reason for striking African-American jurors does not shield the strikes from scrutiny. Although this Court ruled in *Chambliss v. Commonwealth,* 9 Va. App. 267, 386 S.E.2d 478 (1989), that no *Batson* violation occurred in that case, all *Batson* challenges to strikes that are said to be based on age are not sanctioned. Indeed, in *Chambliss* "no challenge [was made] concerning the Commonwealth's assertion that [the excluded jurors] were the youngest members of the jury panel." *Id.* at 269-70, 386 S.E.2d at 479. In addition to the lack of challenge to the explanation, "the record affirmatively reflect[ed] that [one juror] was eighteen years of age and [the other juror] was twenty-one years of age." *Id.* at 269, 386 S.E.2d at 479. In another case in which age was proffered as a reason for a discriminatory exclusion, a panel of this court refused to accept as race neutral the Commonwealth's explanation that it had struck African-American jurors because of age. *See Broady v. Commonwealth,* 16 Va. App. 281, 429 S.E.2d 468 (1993). The record in *Broady,* as in this case, did not support the proffer that age was the reason for the strike of the African-American jurors. *Id.* at 285, 429 S.E.2d at 471. Both *Chambliss* and *Broady* stand for the proposition that age is not a talisman that can be invoked whenever African-Americans are removed from the jury and the record lacks facts that support the removal. The constitution prohibits "sophisticated [and] simple-minded modes of discrimination." *Lane v. Wilson,* 307 U.S. 268, 275 (1939).

The notion that the record must "contain a factual basis to support the Commonwealth's attorney's explanations and the trial judge's conclusion" is not new to this Court. *Jackson v. Commonwealth,* 8 Va. App. 176, 187, 380 S.E.2d 1, 7, *aff'd en banc,* 9 Va. App. 169, 384 S.E.2d 343 (1989); *see also Broady,* 16 Va. App. at 286, 429 S.E.2d at 471. However, the approval of unreasoned rulings upholding the prosecutor's "sensory perceptions" of a juror's age, appearance of home-owning status, and "stake" in the community is unsanctioned by any case law. Approving the conduct that occurred in this case opens the door to jury selection procedures that are "the complete antithesis of the Court's reason for being — to insure equality of treatment and evenhanded justice." *State v. Slappy,* 522 So. 2d 18, 20 (Fla.), *cert. denied,* 487 U.S. 1219 (1988).

[T]he injury caused by the discrimination is made more severe because the government permits it to occur within the courthouse itself. Few places are a more real expression of the constitutional authority of the government than a courtroom, where the law it-

self unfolds. Within the courtroom, the government invokes *its* laws to determine the rights of those who stand before it. In full view of the public, litigants press their cases, witnesses give testimony, juries render verdicts, and judges act with the utmost care to ensure that justice is done.

Race discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality.

*Edmonson,* 500 U.S. at 628.

Because the explanation that the Commonwealth's attorney offered for striking the African-American jurors finds no legitimate support in the record, I would reverse the judgment. Therefore, I dissent.