COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Malveaux and Raphael
Argued by videoconference

PUBLISHED

MAURICE TIRRELL WILLIAMS

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER

v.       Record No. 1441-23-1

NOVEMBER 19, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
W. Revell Lewis, III, Judge

Charles E. Haden for appellant.

Brooke I. Hettig, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Maurice Tirrell Williams appeals his jury-trial conviction for the felony offense of eluding a

law-enforcement officer in violation of Code § 46.2-817.  He contests the trial court's denial of his

challenge to one of the prosecutor's peremptory strikes.  He also argues that the trial court erred

by denying his motion to strike the Commonwealth's evidence because it was sufficient to prove

only misdemeanor, not felony, eluding.  We hold the trial court did not err and affirm the

challenged conviction.

BACKGROUND[1]

I. Attempted Traffic Stop and Police Chase

On the afternoon of Friday, December 11, 2020, Lieutenant Steve Lewis of the Northampton County Sheriff's Office and Sergeant Joshua Marsh of the Accomack County Sheriff's Office were driving an unmarked Dodge Charger in Accomack County.[2] Shortly before 1:00 p.m., Lewis activated his emergency lights and siren and attempted to initiate a traffic stop of Williams, who was driving a silver Chevrolet Impala.[3] Williams signaled and pulled his vehicle onto the shoulder. Before Lewis or Marsh got out of the Charger, however, Williams "took off," and the officers pursued him.

Lieutenant Lewis moved into the left lane to try to get in front of the fleeing car and stop it. In response, Williams crossed "over to [the Charger's] lane driving down the shoulder." As a result, Lewis abandoned the attempt and "proceeded [on] a safe basis."

Williams "ran through [a] stop sign," "passed a few cars," and "went onto [a] curb" with a sidewalk to get around a vehicle in a traffic circle. As Lewis continued the pursuit, Williams "ran [a second] stop sign." He then changed lanes and "cut over to [an] . . . intersection." In doing so, Williams "veered . . . in front of" an SUV. The SUV hit the rear of the Impala, damaging both vehicles.

---

[1] On appellate review, we view the evidence and "all fair inferences" flowing from it "in the 'light most favorable' to the Commonwealth, the prevailing party" below. *Walker v. Commonwealth*, 79 Va. App. 737, 740-41 (2024) (first quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021); and then quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)) (sufficiency); *see Griffin v. Commonwealth*, 78 Va. App. 116, 124 (2023) (challenge to a peremptory strike).

[2] Lewis testified that he was "sworn to operate . . . as a law enforcement officer" in both Northampton and Accomack Counties, as well as with the Virginia State Police.

[3] The lawfulness of the stop is not challenged on appeal.

Williams proceeded on, with the Charger in pursuit, reaching speeds of one hundred miles per hour on a few of the straighter roads in areas with other traffic and a few residences. Williams's Impala then traversed a steep, rough road and drove fifty to sixty miles per hour into a heavily residential area. As the two vehicles approached an "unusually busy" twenty-five mile-per-hour zone with businesses and pedestrians, the police Charger narrowly avoided a collision with another car while it continued the pursuit.

When Williams again approached the highway, Lieutenant Lewis succeeded in stopping him briefly, but Williams then "swerved out and shot over into all kinds of traffic and started to pass" the Charger. While Lewis continued his pursuit, both cars were "in the oncoming traffic lane," and the Impala "grazed the back of [the Charger's] bumper." Lewis braked, the Impala came up beside him, and the two cars "bumped" again.

Lewis took steps to end the pursuit once and for all due to "oncoming traffic." He "veered into" the Impala as it "dr[o]v[e] into" the Charger. The Impala "went up on[to] the curb," "spun around," and stopped. The pursuit lasted a total of about eighteen minutes, and damages to Lieutenant Lewis's Charger totaled $4,000.

## II. Williams's Charges and Trial

Williams was tried by a jury on a felony charge of eluding a police officer and a misdemeanor charge of obstructing justice.

### A. Jury Selection

During jury selection, following the parties' exercise of their peremptory strikes, defense counsel lodged an objection alleging racial discrimination. She suggested that "no testimony or responses [were] elicited from" two of the stricken jurors. She asked the prosecutor "to state his reason for striking two [B]lack females[,] as the defendant is a [B]lack male[ and t]here is very little in the jury pool of his race to begin with."

The prosecutor stated that he struck the first juror, identified in the record as Juror 12, "because she did not seem as alert and responsive." He also said he considered "her young age," explaining he was worried she might not "take her duties serious[ly]." As to the second juror, identified as Juror 14, the prosecutor explained that he struck her due to her "body language." He emphasized that "a[nother] female sitting right in front of her . . . was smiling and nodding" but Juror 14 "seemed to be grimacing and . . . sitting there stoic." The prosecutor expressed "concern that she was not going to be responsive to th[e trial] process."

The trial court interrupted the prosecutor and ruled on the two challenges without explaining the basis for either one. It disallowed the prosecutor's peremptory strike of Juror 12, retaining her as a juror. The court permitted the prosecutor's peremptory strike of Juror 14, resulting in her dismissal. Defense counsel did not lodge any additional objection to the trial court's ruling allowing the dismissal of Juror 14.

## B. Motions to Strike

At the close of the Commonwealth's case-in-chief, defense counsel made a motion to strike the evidence, suggesting that the felony eluding charge should be reduced to misdemeanor eluding. Counsel noted that the stop signs he ran involved right turns, his speeding occurred only on "rural roads," and the collisions "were not major" ones. The prosecutor argued Williams's "high speeds" occurred in occupied areas and noted that two vehicles were hit during his flight, including the pursuing officer's vehicle. He submitted that this evidence proved "the element of the added danger."

The trial court denied the motion to strike. The judge clarified that the evidence proved that Williams drove one hundred miles per hour in not one but two locations. The judge added that the fact that traffic laws permit "a right turn on a stop sign" did not obviate the need to stop before turning, which Williams did not do.

- 4 -

Defense counsel presented no evidence and renewed her motion to strike on the eluding charge on the same grounds. The court again denied the motion, stating that "the case need[ed] to be submitted to [the] jury."

### C. Jury Instructions, Conviction, and Sentence

The jury, which was instructed on both felony and misdemeanor eluding, found Williams guilty of the felony offense. It found him not guilty of obstruction of justice. He was sentenced to the maximum time of five years in prison with no time suspended, with an additional term of two years that was suspended on condition of the successful completion of a period of post-release supervision. *See* Code §§ 18.2-10, 46.2-817(B).

### ANALYSIS

Williams presents two assignments of error. First, he contests the trial court's rejection of his challenge to the prosecutor's use of a peremptory strike. Second, he argues that the evidence was insufficient to support his conviction for the felony rather than misdemeanor offense of eluding a law-enforcement officer.

### I. *Batson* Challenge to the Prosecutor's Peremptory Strike

Williams contends the trial court erred by rejecting his challenge to the prosecutor's use of a peremptory strike to remove Juror 14 from the venire panel.

As recognized in *Batson v. Kentucky*, 476 U.S. 79, 85-86 (1986), a defendant "ha[s] the right," secured by the United States Constitution's guarantee of equal protection, "to be tried by a jury whose members are selected pursuant to non-discriminatory criteria." *See also Stevens v. Commonwealth*, 70 Va. App. 280, 297 (2019) (explaining that *Batson* challenges can include claims of race and gender discrimination). *Batson* sets out a sequential, three-step process for determining whether purposeful discrimination in the selection of the jurors has occurred. *Bethea v. Commonwealth*, 297 Va. 730, 748 (2019). First, "the opponent of the strike 'must make out a

prima facie case' of purposeful discrimination." *Id.* (quoting *Johnson v. California*, 545 U.S. 162, 168 (2005)). Second, in the case of a racial-bias challenge by a criminal defendant, the burden of *production* shifts to the prosecution "'to explain . . . the racial exclusion' by offering [a] permissible race-neutral justification[] for the strike[]." *Id.* (quoting *Johnson*, 545 U.S. at 168). Third, "if a race-neutral explanation is tendered, the trial court must . . . decide whether the opponent of the strike has proved purposeful racial discrimination." *Id.* (quoting *Johnson*, 545 U.S. at 168). Only during the third step does the trial court assess the credibility or "persuasiveness of the justification." *Id.* at 749 (quoting *Johnson*, 545 U.S. at 171). This "three-step architecture of *Batson* presumes the good faith of prosecutors," and throughout the process, the defendant bears "the 'burden of *persuasion*' to 'prove the existence of purposeful discrimination.'" *Id.* at 748 (emphasis added) (quoting *Johnson*, 545 U.S. at 170-71).

Different standards of review apply to the different steps of the *Batson* analysis relevant in this case. Under step two, the appellate court "must determine whether, assuming the proffered reasons for the peremptory challenges are true, [they] violate the Equal Protection Clause *as a matter of law*." *Barksdale v. Commonwealth*, 17 Va. App. 456, 459 (1993) (en banc) (emphasis added) (quoting *Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality opinion)). Consequently, this Court reviews a step-two determination de novo. *See Henderson v. Commonwealth*, 285 Va. 318, 329 (2013) (recognizing that questions of law are reviewed de novo on appeal).

Under step three, by contrast, the appellate court will reverse only if the decision was "clearly erroneous" or "plainly wrong." *Stevens*, 70 Va. App. at 302 (quoting *Avent v. Commonwealth*, 279 Va. 175, 196 (2010)); *see McGee v. Commonwealth*, 25 Va. App. 193, 198 n.1

(1997) (en banc).[4] This is so because whether the opponent of the strike has "establishe[d] purposeful discrimination 'turns on [the trial court's] factual determinations.'" *Stevens*, 70 Va. App. at 302 (quoting *Foster v. Chatman*, 578 U.S. 488, 500 (2016)). In other words, "*Batson*'s treatment of intent to discriminate [i]s a pure issue of fact." *Bethea*, 297 Va. at 756 (alteration in original) (quoting *Hernandez*, 500 U.S. at 364). The trial court, therefore, "has a pivotal role in evaluating . . . not only whether the prosecutor's demeanor belie[d] a discriminatory intent, but also whether the juror's demeanor c[ould] credibly be said to have exhibited the [prosecutor's stated] basis for the strike." *Stevens*, 70 Va. App. at 302 (first alteration in original) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)). In short, the trial court's findings on these subjects are "entitled to 'great deference.'" *Bethea*, 297 Va. at 756 (quoting *Davis v. Ayala*, 576 U.S. 257, 271 (2015)). It is within this legal framework that the Court analyzes Williams's claim of error under *Batson*.

Williams contends that the prosecutor's stated basis for striking Juror 14 from the venire panel—her "body language"—was "plainly inadequate" as a race-neutral reason. He further suggests that, even if the stated basis was race-neutral, it was "pretext[ual]" and not "credible." Williams argues "the real reason for the strike was that [Juror 14] was one of the few members of the venire panel of the same race as [him]," a "no[n-]race-neutral" reason and therefore an

---

[4] Virginia's appellate courts have implicitly equated the term "clear error," which is "'derived from Rule 52(a) of the Federal Rules of Civil Procedure[] and applies when reviewing questions of fact' in the federal system," with the term "plainly wrong," the standard under which findings of fact are reviewed in Virginia's appellate courts. *McGee*, 25 Va. App. at 198 n.1 (first quoting *Ornelas v. United States*, 517 U.S. 690, 694 n.3 (1996); and then quoting *Quantum Dev. Co. v. Luckett*, 242 Va. 159, 161 (1991), and *Naulty v. Commonwealth*, 2 Va. App. 523, 527 (1986)); *accord MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 457 (2017) (explicitly equating the standards in the civil context); *see also New Dimensions, Inc. v. Tarquini*, 286 Va. 28, 35 (2013) (recognizing that "federal substantive law is applied under state procedural rules to the extent that the state rules do not interfere with the consistent operation of federal law").

impermissible basis under *Batson*. These contentions raise both step-two and step-three claims under *Batson*.[5]

The step-two claim concerns whether the prosecutor provided a facially race-neutral reason for striking Juror 14 under the *Batson* test, based on his assertion that he did so because of her negative "body language." Williams argues this explanation was "plainly inadequate." This Court, however, has rejected such a claim, holding that "concern[] based upon [the prosecutor's] observations (or [even a] lack thereof) of . . . [a] juror's body language or demeanor during *voir dire* is certainly a . . . race-neutral reason for striking a juror." *Griffin v. Commonwealth*, 78 Va. App. 116, 138-39 (2023); *see Goodson v. Commonwealth*, 22 Va. App. 61, 81 (1996) ("Age, education, employment, and demeanor during *voir dire* may constitute race-neutral explanations for a peremptory strike."). The prosecutor's reason, therefore, satisfies step two of the *Batson* test.

The step-three claim involves whether the prosecutor's "body language" rationale was credible or pretextual under that portion of the *Batson* test.[6] Whether the prosecutor acted with an intent to discriminate is a finding of fact "entitled to 'great deference.'" *Bethea*, 297 Va. at 756

---

[5] Step one of *Batson* requires a defendant to make out "a mere prima facie case of discrimination." *Bethea*, 297 Va. at 749. A defendant does so by showing both "that he is a member of a cognizable racial group[]" and "that the prosecutor has exercised [a] peremptory challenge[] to remove . . . [a] venire member[] of the defendant's race." *Stevens*, 70 Va. App. at 296-97 (quoting *Batson*, 476 U.S. at 96). The adequacy of Williams's step-one allegation is not in dispute in this case.

[6] The Commonwealth suggests that Williams failed to preserve his step-three claim of pretext for appeal. We assume without deciding that this claim is properly before us. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (assuming without deciding that an issue was properly before the Court because addressing it on the merits provided the best and narrowest ground for resolution). *See generally Griffin*, 78 Va. App. at 129, 138 (holding that, where the prosecutor gave race- and gender-neutral reasons for his four strikes and the defendant specifically challenged only two of those strikes as pretextual, he waived his right to challenge the other two strikes as pretextual on appeal). *But cf. generally Faison v. Hudson*, 243 Va. 397, 402 (1992) (holding that "[i]mplicit in the trial court's [step-two] ruling that [the prosecutor] had not stated 'a racially neutral explanation' was a finding that [the defendant] had established a *prima facie* case [under step one]"), *cited with approval in Barksdale*, 17 Va. App. at 459, *and Stevens*, 70 Va. App. at 297 n.9.

(quoting *Davis*, 576 U.S. at 271). Here, the prosecutor told the trial judge, who necessarily was present throughout the voir dire, what he observed about Juror 14 as compared to the rest of the jury pool. He noted that he struck her as a result of her "body language." He emphasized for comparison purposes that "a[nother] female sitting right in front of her . . . was smiling and nodding" as she responded but Juror 14 "seemed to be grimacing and just kind of sitting there stoic." The prosecutor added he was "concern[ed] that [Juror 14] was not going to be responsive to th[e trial] process." The trial court was in the best position to assess the prosecutor's credibility both based on his demeanor alone and in the context of the behavior of Juror 14 during voir dire. *See Stevens*, 70 Va. App. at 302; *accord Davis*, 576 U.S. at 274 ("Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation." (quoting *Rice v. Collins*, 546 U.S. 333, 343 (2006) (Breyer, J., concurring))), *quoted with approval in Griffin*, 78 Va. App. at 139. Viewed under the applicable standard for step three, the trial court's acceptance of the prosecutor's explanation as credible was not clearly erroneous or plainly wrong.

On these grounds, the trial court did not err by rejecting Williams's *Batson* challenge to the prosecutor's use of a peremptory strike to remove Juror 14 from the venire panel.

## II. Sufficiency of the Evidence to Prove Felony Eluding

Williams challenges the sufficiency of the evidence to prove he committed the felony offense of eluding a police officer in violation of Code § 46.2-817(B). He suggests the evidence established a "reasonable hypothesis of [his] innocence" of the felony and proved him guilty of only the misdemeanor under subsection (A).

To the extent our analysis requires us to interpret the language in a statute, we do so de novo. *Bland-Henderson v. Commonwealth*, 303 Va. 212, 218 (2024). But in determining whether the evidence was sufficient to prove the offense, "we review factfinding with the highest

degree of appellate deference." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). This deference is owed not only to the jury's assessment of the credibility of the witnesses but also to the inferences to be drawn "from basic facts to ultimate facts." *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[F]or an appellate court, '[t]he only "relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (second and third alterations in original) (quoting *Barney*, 302 Va. at 97 (emphasis added)).

Any element of a crime may be proved using circumstantial evidence "as long as the evidence as a whole is sufficiently convincing to exclude all reasonable hypotheses of [the defendant's] innocence." *Boone v. Commonwealth*, 63 Va. App. 383, 393 (2014). "The Commonwealth, however, 'need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.'" *Young v. Commonwealth*, 70 Va. App. 646, 653 (2019) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Vasquez v. Commonwealth*, 291 Va. 232, 249-50 (2016) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). It is under these well-established standards that we review Williams's sufficiency challenge.

Code § 46.2-817 proscribes both the felony and misdemeanor offenses of eluding a police officer. The additional element that elevates the crime to a felony requires proof that the eluding "interfere[d] with or endanger[ed] the operation of the [pursuing] law-enforcement vehicle or

endanger[ed] a person." Code § 46.2-817(B).[7] If the evidence does not prove this element, the defendant is guilty of only a misdemeanor. Code § 46.2-817(A). The jury was instructed on these two grades of the offense, and it convicted him of the greater offense.

Williams suggests that the evidence did not establish a felony violation because it failed to prove "that [his] operation of the vehicle endangered any person."[8] He admits driving at speeds of one hundred miles per hour in two locations but emphasizes that this occurred on "rural roads." Williams notes that although he "went through stop signs" without stopping, he turned right in those instances, implying that his behavior was less egregious than if he had been turning left or going straight. Finally, he suggests that the vehicle impacts that occurred "did not render the vehicles undrivable" and "were not major collisions."

Despite these proffered distinctions, the evidence is sufficient to prove that Williams's behavior "endanger[ed] a person" within the meaning of Code § 46.2-817(B). This term, as used in the statute, "encompasses the entire universe of people, including the defendant." *Phelps v. Commonwealth*, 275 Va. 139, 142 (2008). "The object of the endangerment," therefore, "can be the driver himself, the police officer, or anyone else on the road [who] could be put at risk from the driver's eluding." *Coleman v. Commonwealth*, 52 Va. App. 19, 24 (2008). And "endanger"

---

[7] Both categories of the crime of eluding in a motor vehicle require proof that the defendant "received a visible or audible signal from a[] law-enforcement officer to bring his motor vehicle to a stop" and "dr[o]ve[ that] motor vehicle in a willful and wanton disregard of [the] signal." Code § 46.2-817(A)-(B). These elements are not challenged on appeal.

[8] We assume without deciding that Williams did not waive this claim by failing to address the second way a felony violation of Code § 46.2-817 may be proved—with evidence that his driving "interfere[d] with or endanger[ed] the operation of the law-enforcement vehicle"—a point not raised by the Commonwealth. *See McGinnis*, 296 Va. at 501. *See generally Johnson v. Commonwealth*, 45 Va. App. 113, 116-17 (2005) (holding that where two alternative grounds may have supported the trial court's ruling and the defendant challenged only one on appeal, his failure to challenge the other ground constituted a waiver of his right to consideration of the appeal), *quoted with approval in Ferguson v. Stokes*, 287 Va. 446, 452-53 (2014).

means "to '*expose* to danger, harm, or loss.'" *Id.* (emphasis added) (quoting *Endanger*, *Webster's New World Dictionary* (3d coll. ed. 1988), and *Endanger*, *The American Heritage Dictionary* (2d coll. ed. 1982)). Conduct that raises merely "the *specter of endangerment*," therefore, is adequate to prove the offense. *Tucker v. Commonwealth*, 38 Va. App. 343, 347 (2002) (emphasis added). In fact, "[t]o require the threat to be imminent would engraft an [additional] element [on]to the offense . . . [and] subvert[] the salutary purpose[] of the statute." *Id.*[9] In other words, for purposes of the statute, it does not matter whether the defendant "r[a]n into another vehicle or a pedestrian during [his vehicular flight] or, for that matter, ma[d]e a specific maneuver causing him or someone else to be 'actually imperiled' by an imminent collision." *Coleman*, 52 Va. App. at 25 (quoting *Tucker*, 38 Va. App. at 347). "That the exposure . . . d[id] not result in any actual harm is a welcome fortuity, but not a legal defense." *Id.* at 24.

In the instant case, Williams's acts of eluding "endanger[ed]" any number of "person[s]" within the meaning of the felony offense defined in Code § 46.2-817(B)—including himself, the officers pursuing him, and everyone else driving or walking in the vicinity of the lengthy pursuit.

At the beginning of the chase, when Lieutenant Lewis maneuvered his Charger to try to stop the Impala, Williams swerved into the Charger's lane and drove down the shoulder. Lewis testified that the immediate danger from this maneuver ceased only because he temporarily abandoned his effort to stop Williams. As Lewis continued to follow the Impala, Williams ran at least two stop signs and drove on a sidewalk. He then "veered" in front of an SUV, causing a collision that damaged both the SUV and the Impala. He drove at speeds of one hundred miles per hour at two different points during his flight, at least once while on a road with residential

---

[9] Code § 46.2-817(B) previously required that the endangerment result in "serious bodily injury to another" to be a felony, but this requirement was removed in 1999. *Coleman*, 52 Va. App. at 24 (citing 1999 Va. Acts ch. 720).

- 12 -

housing. As the prosecutor observed, anyone "back[ing] out of their driveway . . . could have been hit." Williams also drove fifty to sixty miles per hour into a heavily residential area. And when Williams entered an "unusually busy" area with businesses, pedestrians, and a twenty-five mile-per-hour speed limit, the police Charger pursuing the Impala narrowly avoided a collision with another car.

Near the end of the chase, Lewis again tried to force Williams to stop by veering toward the Impala and pushing it against the curb. After briefly stopping, however, Williams "shot over into all kinds of traffic," hit the rear of the Charger, and then "bumped" the Charger again. When Lewis tried to finally put an end to the pursuit, Williams drove the Impala into the Charger yet another time before the Impala was stopped for good. And the Charger sustained about $4,000 in damage.

In sum, Williams operated the Impala at speeds of up to one hundred miles per hour at least twice during a car chase that lasted eighteen minutes. The pursuit traversed, at various points, crowded residential and business areas, and resulted in multiple impacts with other vehicles along the route. *Cf. Coleman*, 52 Va. App. at 25 (upholding a conviction for felony eluding following a "two-mile chase" where the defendant, although he was intoxicated and drove erratically, "did not actually run into another vehicle or a pedestrian"). This evidence was more than sufficient to prove that Williams's ongoing acts of eluding satisfied the challenged element of the felony offense by endangering "a[ny] person." *See* Code § 46.2-817(B). *See generally Fary v. Commonwealth*, 77 Va. App. 331, 344 (2023) (en banc) ("Whether an alternate hypothesis of innocence is reasonable is a question of fact [the resolution of which] is binding on appeal unless plainly wrong." (quoting *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022))), *aff'd*, 303 Va. 1 (2024).

CONCLUSION

We hold that the trial court did not err.  The record supports the trial court's rulings that the prosecutor provided a facially race-neutral justification for his strike of the challenged juror and that the stated reason was not pretextual.  Further, the evidence was sufficient to prove that Williams drove his vehicle in a manner that proved the offense of felony eluding of a law-enforcement officer.  As a result, we affirm his conviction.

*Affirmed.*