415 S.E.2d 229 (1992)
George Frederick BUCK
v.
COMMONWEALTH of Virginia.
Record No. 0593-90-2.
Court of Appeals of Virginia.
March 3, 1992.
Rehearing En Banc Granted April 27, 1992.
*231 John W. Luxton, Richmond (Anthony G. Spencer, Morchower, Luxton and Whaley, on brief), for appellant.
Kathleen B. Martin, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Present: BAKER, BENTON and ELDER, JJ.
*230 BENTON, Judge.
George Frederick Buck appeals from his conviction for possession of cocaine with intent to distribute. He contends that the trial judge erred in (1) allowing the Commonwealth to use two of its peremptory strikes to remove African-Americans from the jury panel because of their race, and (2) admitting hearsay testimony by a police officer to prove that an informant saw cocaine in an automobile in which Buck was a passenger. We reverse the conviction and remand this case for a new trial.

I.
Chesterfield County police officers equipped an informant with a hidden microphone and monitored the informant's activities in the parking lot of a convenience store. The informant approached an automobile in which Buck was a passenger and began a conversation. When the informant used the phrase "good stuff," a prearranged code, the police removed Buck and the driver from the automobile and arrested Buck. The police found cocaine on the floor of the automobile near Buck.
Buck's trial counsel made a motion in limine asking the trial judge to rule that several statements were hearsay. Although trial counsel asserted that many such statements had been made at the preliminary hearing, trial counsel did not further identify the statements. The prosecutor stated that the prearranged code was an exception to the hearsay rule. The trial judge ruled that, within the context of the proffer, the statement "good stuff" was an exception to the hearsay rule because the Commonwealth planned to offer it to prove the catalyst for the police response. Buck's trial counsel responded, "there's no problem with that statement."
At trial, the prosecutor used peremptory challenges to strike two of the three African-Americans on the jury panel. Buck, an African-American, immediately challenged these strikes. The prosecutor stated he struck Constance Bowen because of her relative youth and because she had no children. He also stated he struck Richard T. Wright because (1) Wright was wearing a Virginia State University varsity jacket, that he believed was not appropriate dress in which to serve on a jury, and (2) Wright had a Petersburg address, which suggested to the prosecutor that Wright lived near a city with a significant drug problem and, thus, would be tolerant of drug use. Over Buck's objections, the trial judge found the prosecutor's strikes were motivated by non-racial, neutral reasons.

II.
The Equal Protection clause is violated when citizens are purposefully excluded on account of their race from participating on a jury. Batson v. Kentucky, 476 U.S. 79, 84, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69 (1986). A defendant may establish a prima facie case of such discrimination based solely on the prosecutor's exercise of peremptory challenges. Taitano v. Commonwealth, 4 Va.App. 342, 346, 358 S.E.2d 590, 592 (1987). To do so, a defendant must show that: (1) the defendant is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of the defendant's race from the jury pool; and (3) these and other relevant facts and circumstances raise an inference that the prosecutor acted to exclude members of the jury because of their race. Jackson v. Commonwealth, *232 8 Va.App. 176, 180-81, 380 S.E.2d 1, 3 (1989).[1]
Buck established a prima facie case. Buck is an African-American. The record proves that the prosecutor exercised peremptory challenges to strike from the jury two African-Americans. The prosecutor did not ask any questions on voir dire. Moreover, the prosecutor responded that he had "only struck two blacks" when defending his action before the trial judge. "[T]he defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.'" Batson, 476 U.S. at 96, 106 S.Ct. at 1723 (quoting Avery v. Georgia, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)). A defendant need not show the complete exclusion of a racial group to prove a prima facie case. If the Commonwealth exercised any of its peremptory strikes for a racially discriminatory reason, the rights of the excused juror have been violated. See Powers, ___ U.S. at ___, 111 S.Ct. at 1370.
The prosecutor claimed he struck Bowen because of her relative youth and lack of children. Bowen was twenty-eight years of age. The prosecutor did not strike, however, a twenty-three year old white female juror with no children. Likewise, the prosecutor did not strike a childless white male juror.
The prosecutor claimed he struck Wright because he wore a university varsity jacket and had a Petersburg address. The prosecutor provided no explanation why he considered it objectionable for a prospective juror to wear a jacket bearing the logo of Virginia State University, which is predominately African-American and located in Chesterfield County, see Norris v. State Council of Higher Educ., 327 F.Supp. 1368, 1370 (E.D.Va.), aff'd sub nom. Board of Visitors of the College of William & Mary v. Norris, 404 U.S. 907, 92 S.Ct. 227, 30 L.Ed.2d 180 (1971). A jacket is not an unusual choice of clothing for a juror to wear in December.
The list of jury panel members shows that Wright has a Richmond mailing address, not a Petersburg address, as stated by the prosecutor. Moreover, even if Wright had a Petersburg mailing address, the prosecutor provided no rational or nonracial explanation for his assertion that a person who lives in the county and has a Petersburg mailing address is tolerant of drug use. Based on the prosecutor's explanation for striking Bowen, Wright, who was forty-four years old and the father of two children at the time of the trial, should have been a desirable jury member.
It is not enough for the prosecutor to offer "rote `neutral explanations' which are only facially legitimate. If this were sufficient, the Batson inquiry would amount to little more than a charade." Jackson, 8 Va.App. at 186, 380 S.E.2d at 6 (citation omitted). Here, the trial judge, upon hearing the Commonwealth's explanations, found only that:
[T]he reasons are for trial tactics, and the Commonwealth represents that race was not a consideration in any of the reasons he stated that come across to me. They are legitimate reasons of trial tactics. There is basis for those, and counsel's decision to strike someone for reasons that may affect their view of the testimony and because of that I think I find that the Commonwealth's strikes were reasonably made....
Merely labelling the challenges "trial tactics" and stating that it is permissible to strike jurors "for reasons that may affect their view of the testimony" do not reflect sufficient scrutiny of the prosecutor's actions or explanations. Rubber stamp approval of all purported non-racial explanations will not satisfy Batson. Jackson, 8 Va.App. at 184-85, 380 S.E.2d at 5-6. Because the underlying explanations offered for striking the two jurors find no legitimate *233 support in the record and, indeed, are contrary to the facts, we find that the trial judge erred in finding that the prosecutor's explanations were non-racial and neutral. The prosecutor's explanations do not overcome the prima facie case of discrimination.

III.
With new counsel, Buck challenges in this Court the trial judge's admission of the police officers' testimony regarding the informant's use of the code phrase "good stuff." However, during the in limine hearing, Buck's trial counsel, in effect, conceded the admissibility of the testimony at issue, saying "there's no problem with that statement." At trial, when the officer began to testify concerning the arrangement with the informant, Buck's trial counsel objected "to the hearsay." Buck's trial counsel never specifically objected either to statements concerning the code "good stuff" or to testimony concerning the code. Buck's trial counsel also did not object when the Commonwealth mentioned the code in closing argument. By conceding its admission in the hearing and failing specifically to object at trial, Buck waived any objection to the admission of the phrase "good stuff" and is procedurally barred from raising the issue on appeal. Rule 5A:18.
However, Buck is entitled to a new trial because of the Batson violation.
Reversed and remanded.
BAKER, Judge, dissenting.
I respectfully disagree with the finding of the majority. The entire portion of the transcript relating to the selection of jurors is as follows:
MS. RAND: Your Honor, may we approach the bench for one minute?
THE COURT: Yes.
NOTE: The following bench conference is held out of the hearing of the jury:
BENCH CONFERENCE:
MS. RAND: I want to challenge the first strike that the Commonwealth took and ask for the Commonwealth to clarify the reason for striking Ms. Bowen.
MR. VON SCHUCH: There were a number of reasons, Judge. The first reason was the relative youth of the juror. Compared to the rest, she's only 28, and most of the rest of them are in their thirties and forties. The second thing was that she had no children according to the sheet.[2] Most of the other jurors do have children.[3] I was conscious of that, because this is a case where the parents of children, particularly older children, might be more susceptible to the Commonwealth's point of view in terms of this being a drug distribution case.
Under those circumstances, I felt that she was appropriate to strike.
I would point out to the Court that there were a total of three blacks on the jury. The Commonwealth struck only two, leaving on the jury Ms. Blizzard.
MS. RAND: I didn't realize there was a third one.
What was the explanation on the other one?
THE COURT: The second strike?
MR. VON SCHUCH: Mr. Wright?
THE COURT: Yes.
MR. VON SCHUCH: Yes, sir, because he came into the court with the other jurors and appeared not to be dressed for the occasion. He came in wearing a Virginia State Varsity jacket; he has a Petersburg address. Living in that part of the county, Petersburg has a significant drug problem. Based on his appearance and the address location, I thought that he would be tolerant of this type of offense.
THE COURT: Ms. Rand?
MS. RAND: My concern was that the jurors are not representative of the population. There were three blacks on the panel. We now only have one, and I would think more significant reasons than what was given should be shown.

*234 THE COURT: Well, the reasons are reasons for trial tactics, and the Commonwealth represents that race was not a consideration in any of the reasons that he stated and that come across to me.
They are legitimate reasons of trial tactics. There is basis for those, and counsel's decision to strike someone for reasons that may affect their view of the testimony, and because of that I think that I find that the Commonwealth's strikes were reasonably made and I note your exception to the Court's ruling.
I would find the reasons given by the prosecutor neutral.
In the instant case, the Commonwealth attorney articulated clear and specific non-racial reasons for striking each juror. With respect to each of the jurors struck, the Commonwealth attorney stated that he was concerned because they lived near the defendant or near the scene of the crime, or in areas of "high crime" generally. The Commonwealth attorney also considered the age, dress, and demeanor of the prospective jurors in exercising his peremptory challenges. These specific, neutral reasons are sufficient to rebut a prima facie case of purposeful discrimination.
Taitano v. Commonwealth, 4 Va.App. 342, 347, 358 S.E.2d 590, 592-93 (1987) (citations omitted).
I do not necessarily disagree with the majority's finding that Rule 5A:18 bars appellant's hearsay argument; however, because the majority remands the case for a new trial I would advise the trial court that because the statement was not offered for its truth, but only to show how the officers were alerted to act it was not error to permit this to evidence at trial.
For the reasons stated, I would affirm the judgment of the trial court.

Upon a Petition for Rehearing En Banc Before the Full Court
On March 17, 1992 came the appellee, by the Attorney General of Virginia, and filed a petition praying that the Court set aside the judgment rendered herein on March 3, 1992 and grant a rehearing en banc thereof.
On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on March 3, 1992 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.
The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.
NOTES
[1] Subsequent to Jackson, the United States Supreme Court held that equal protection of the laws is denied to veniremen struck on account of their race irrespective of the race of the defendant. Racial identity between the defendant and the excused person is, however, a relevant fact in analyzing the conduct of the prosecution. See Powers v. Ohio, ___ U.S.___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).
[2] The original transcript reported that Ms. Bowen" "had children" and that most of the other jurors "do not have children." This was erroneously reported and at a hearing held on October 18, 1990, the record was corrected to read as shown here.
[3] See footnote 2.