## GEORGE FREDERICK BUCK

V.

## COMMONWEALTH OF VIRGINIA

Record No. 930960

April 15, 1994

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ.,
and Poff, Senior Justice

*John W. Luxton (Anthony G. Spencer; Morchower, Luxton & Whaley,* on brief), for appellant.

*Kathleen B. Martin, Assistant Attorney General (Stephen D. Rosenthal, Attorney General,* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

George Frederick Buck was found guilty by a jury in the Circuit Court of the County of Chesterfield of possession of cocaine with intent to distribute. The circuit court sentenced him to forty years in prison and imposed a $15,000 fine in accordance with the verdict. Buck challenged his conviction, alleging that he was denied constitutional due process and equal protection of the law because the prosecution used two of its peremptory strikes to remove two of the three African-Americans from the jury panel in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986). A panel of the Court of Appeals reversed the conviction, concluding that the Commonwealth had exercised the strikes in violation of *Batson. Buck v. Commonwealth,* 14 Va. App. 10, 14, 415 S.E.2d 229, 232-33 (1992). In a rehearing *en banc,* the Court of Appeals reversed the panel and held that the strikes had been used in a racially neutral manner. *Buck v. Commonwealth,* 16 Va. App. 551, 554, 432 S.E.2d 180, 182 (1993). We awarded Buck an appeal.

The United States Supreme Court has outlined the procedure for determining whether a prosecutor exercised a peremptory strike to remove a prospective juror solely on account of the juror's race. A defendant must first establish a *prima facie* showing that the peremptory strike was made on the basis of race. *Powers v. Ohio,* 499 U.S.

400, 409 (1991). At that point, the burden shifts to the prosecution to produce explanations for striking the juror which are race-neutral. Batson, 476 U.S. at 96-97. Even if race-neutral, the reasons may be challenged by the defendant as pretextual. *United States v. Joe,* 928 F.2d 99, 103 (4th Cir. 1991). Finally, the trial court must decide whether the defendant has carried his burden of proving purposeful discrimination by the prosecutor in selecting the jury panel. *Batson,* 476 U.S. at 98. On appeal, the trial court's findings will be reversed only if they are clearly erroneous. *Hernandez v. New York,* 500 U.S. 352, ___, 111 S.Ct. 1859, 1871 (1991); *Wright v. Commonwealth,* 245 Va. 177, 186, 427 S.E.2d 379, 386 (1993).

The Commonwealth struck two of the three African-Americans from the jury panel: Constance T. Bowen and Richard T. Wright. Buck, an African-American, challenged the peremptory strikes pursuant to *Batson* and asked the prosecutor to state his reasons for the strikes. The prosecutor replied that Ms. Bowen was relatively young when compared with the rest of the venire and that she did not have children, while most of the other potential jurors did. The Commonwealth stated that, because the case was a drug distribution case, parents of children, particularly parents of older children, "might be more susceptible to the Commonwealth's point of view."

With regard to venireman Wright, the Commonwealth explained that Mr. Wright was wearing a college athletic jacket, and, therefore, did not appear to be appropriately dressed for court. Furthermore, the Commonwealth stated that Mr. Wright had a Petersburg address, and that the Petersburg area had a significant drug problem. Based on Wright's appearance and address, the Commonwealth thought he might be more "tolerant of this type of offense." After providing the defense counsel an opportunity to comment on the reasons proffered by the prosecution, the trial court concluded that the reasons identified for striking potential jurors Wright and Bowen from the jury panel were "legitimate reasons of trial tactics," and that race was not a consideration.

■ Because the Commonwealth offered its reasons for the strikes, we need not consider whether Buck established a *prima facie* showing of discrimination. *Hernandez,* 500 U.S. at ___, 111 S.Ct. at 1866. Additionally, Buck concedes that the Commonwealth's explanations for the strikes were race-neutral. Our review, then, is confined to Buck's assertion that the trial court's holding was clearly erroneous because the reasons given were pretextual and were not "legitimate reasons based on the available facts."

With regard to Ms. Bowen, Buck argues that although she was only 28 years old and had no children, the jury list shows that another member of the jury, Sonya Burley, was 23 years old and also had no children. This jury member, a Caucasian female, was not struck by the Commonwealth. To strike Ms. Bowen but not Ms. Burley, Buck argues, shows that the reasons given by the prosecution for striking Ms. Bowen were simply an attempt to justify a racially motivated strike.

With regard to Mr. Wright, Buck argues that Wright did not live in Petersburg and, in fact, the jury list shows that he had a Richmond address. Five other individuals on the list also had Richmond addresses but were not struck. This error in address, along with the generalization that all persons with Petersburg mailing addresses might be more tolerant of drug-related offenses, Buck argues, shows the pretextual nature of the Commonwealth's stated rationale for the peremptory strikes. With regard to Mr. Wright's attire, Buck points out that the trial occurred on December 22, 1989, and that a jacket was appropriate dress for the beginning of winter. Furthermore, Buck argues that an athletic jacket of a "present or past college student who had succeeded or was succeeding in some form of athletic endeavor . . . . represents past or present responsibility as opposed to tolerance of illegal activity." Accordingly, Buck concludes that the reasons proffered by the prosecution for striking Mr. Wright, like those given for striking Ms. Bowen, were pretextual and that, under these circumstances, the findings of the trial judge were clearly erroneous.

■ At trial, however, Buck did not make the arguments which he makes here. Before the trial court made any determination as to whether the proffered reasons for the strikes were race-neutral, Buck was given the opportunity to explain to the court why he believed the reasons given were pretextual. The only statement made at trial by Buck's counsel was:

My concern was that the jurors are not representative of the population. There were three blacks on the panel. We now only have one, and I would think more significant reasons than what was given should be shown.

Nothing in this statement informed the trial court that Buck believed that the reasons advanced were pretextual because they were inconsistently applied, nor did Buck's statement advise the court that the reasons were based on a mistake concerning an address, an improper assumption of toleration for drug-related crimes, or erroneous inferences drawn from the wearing of an athletic jacket. Buck's failure to raise these arguments before the trial court precludes him from raising

them for the first time on appeal. Rule 5:25; *Church v. Commonwealth,* 230 Va. 208, 212-13, 335 S.E.2d 823, 826 (1985); *accord United States v. McMillon,* 14 F.3d 948, 953 (4th Cir. 1994); *United States v. Lane,* 866 F.2d 103, 106 (4th Cir. 1989); *State v. Scott,* 493 N.W.2d 546, 549 (Minn. 1992).

Buck argues, however, that even if these arguments were not raised at trial, facts contained in the jury list directly contradicted the Commonwealth's stated reasons, making the trial court's determination clearly erroneous and compelling reversal by this Court. We disagree.

■ In applying the clearly erroneous standard of review, it is inappropriate to consider the information contained in the jury list under the circumstances of this case. First, although it is uncontested that the trial judge had access to the list, neither party referred to the list or introduced it as an exhibit or evidence at trial.* Under these circumstances, to consider the jury list would effectively alter our review to an "independent" or "de novo" review, a standard of review which has been rejected for cases involving *Batson* challenges. *Hernandez,* 500 U.S. at ___, 111 S.Ct. at 1869-71.

■ More importantly, Buck's position requires a trial court to seek out and evaluate information or evidence not utilized by either party. Buck has not cited, and we cannot find, any case that places such a burden upon the trial court in the absence of defense counsel's identification of a false or pretextual reason for the peremptory strikes. *Cf. Broady v. Commonwealth,* 16 Va. App. 281, ___, 429 S.E.2d 468, 471 (1993) (defense motion that age test not applied consistently prompted trial court to instruct sheriff to determine age of Caucasian jurors). Adoption of Buck's theory would relieve the defense of the burden placed on him by the Supreme Court in *Batson, i.e.,* proving that the prosecution engaged in purposeful discrimination, and would place that burden on the trial court.

■ In conclusion, we decline Buck's invitation to erode the proof burden of the defendant established in *Batson.* We see no reason why our rule of appellate procedure that precludes a party from raising on appeal an issue which was not raised at the trial level, Rule 5:25, should not be applied in this case.

Accordingly, we will affirm the judgment of the Court of Appeals.

*Affirmed.*

---

* The jury list was not part of the record on appeal until Buck sought a writ of certiorari to the trial court pursuant to Code § 8.01-675.4 to add the list to the record on appeal. On January 30, 1991, the Court of Appeals granted Buck's motion to correct the record by including the jury list from the December 22, 1989 trial.

JUSTICE HASSELL, dissenting.

I dissent because I believe that the prosecutor removed the African-Americans from the venire solely because of their race, and the prosecutor's acts of invidious racial discrimination should not be countenanced by this Court through the application of a procedural bar that was not asserted by the Commonwealth in this case when it was argued in the Court of Appeals.

During the trial, the following colloquy occurred between counsel and the court:

> Ms. Rand [Counsel for Buck]: I want to challenge the first strike that the Commonwealth took and ask for the Commonwealth to clarify the reason for striking Ms. Bowen.
>
> Mr. Von Schuch [Counsel for the Commonwealth]: There were a number of reasons, Judge. The first reason was the relative youth of the juror. Compared to the rest, she's only 28, and most of the rest of them are in their thirties and forties. The second thing was that she had no children according to the sheet. Most of the other jurors do have children. I was conscious of that, because this is a case where the parents of children, particularly older children, might be more susceptible to the Commonwealth's point of view in terms of this being a drug distribution case.
>
> Under those circumstances, I felt that she was appropriate to strike.
>
> I would point out to the Court that there were a total of three blacks on the jury. The Commonwealth struck only two, leaving on the jury Ms. Blizzard.
>
> Ms. Rand: I didn't realize there was a third one.
>
> What was the explanation on the other one?
>
> The Court: The second strike?
>
> Mr. Von Schuch: Mr. Wright?
>
> The Court: Yes.

Mr. Von Schuch: Yes, sir, because he came into the court with the other jurors and appeared not to be dressed for the occasion. He came in wearing a Virginia State Varsity jacket; he has a Petersburg address. Living in that part of the county, Petersburg has a significant drug problem. Based on his appearance and the address location, I thought that he would be tolerant of this type of offense.

The Court: Ms. Rand?

Ms. Rand: My concern was that the jurors are not representative of the population. There were three blacks on the panel. We now only have one, and I would think more significant reasons than what was given should be shown.

The Court: Well, the reasons are reasons for trial tactics, and the Commonwealth represents that race was not a consideration in any of the reasons that he stated that come across to me.

They are legitimate reasons of trial tactics. There is basis for those, and counsel's decision to strike someone for reasons that may affect their view of the testimony, and because of that I think that I find that the Commonwealth's strikes were reasonably made and I note your exception to the Court's ruling.

The jury returned a verdict that sentenced Buck to forty years in prison and imposed a $15,000 fine, and that verdict was confirmed by the trial court. Buck appealed the judgment of the trial court to the Court of Appeals.

As required by the Rules of the Court of Appeals, the litigants filed their respective briefs. Buck argued before a panel of the Court of Appeals that the prosecutor exercised his peremptory strikes in a racially discriminatory manner to remove African-Americans from the venire. The Commonwealth did not argue that Buck's contention was procedurally barred, even though the Commonwealth argued that an issue involving the admission of certain hearsay testimony at trial was procedurally barred. The panel of the Court of Appeals held that the prosecutor exercised his peremptory strikes in a racially discriminatory manner and, therefore, reversed the judgment of the trial court. *Buck* v. *Commonwealth,* 14 Va. App. 10, 415 S.E.2d 229 (1992).

The Commonwealth filed a petition with the Court of Appeals for a rehearing *en banc.* In its petition, the Commonwealth argued that "the

panel erred by finding that the prosecutor's explanations for his peremptory strikes against two black jurors were not racially neutral." The Commonwealth did not assert that Buck's claims were procedurally barred. The Court of Appeals, sitting *en banc,* reversed the judgment of the panel and affirmed the judgment of the trial court. *Buck* v. *Commonwealth,* 16 Va. App. 557, 432 S.E.2d 180 (1993).

Buck filed a petition for appeal with this Court. The Commonwealth did not file any pleadings in response to Buck's petition. We awarded Buck an appeal.

The Commonwealth asserts its procedural bar argument for the first time in this Court, after Buck's appeal had been awarded. The Commonwealth should not be permitted to do so. In essence, the Commonwealth is permitted to play "fast and loose" with the Court of Appeals and this Court in its attempt to prevent this Court from correcting the harmful effects of the prosecutor's acts of racial discrimination in the jury selection process.

If the Commonwealth is permitted to assert a procedural bar in this Court, even though the Commonwealth failed to do so in the Court of Appeals, then the judgment of the Court of Appeals is rendered merely advisory. This case is an excellent illustration of the Commonwealth's dilatory tactics because two proceedings, one by a panel of the Court of Appeals and another by the Court of Appeals sitting *en banc,* have been rendered advisory by the judgment of this Court. I am not aware of any other appeal from the Court of Appeals in which this Court has permitted an appellant to raise a procedural bar that is not jurisdictional when the bar was not raised in the Court of Appeals.

I also observe that on several occasions, this Court has not applied the procedural bar of Rule 5:25 when a majority of this Court desired to adjudicate the merits of a case. For example, just this session, one day before *Buck* was argued at the bar of this Court, we decided *Mannix* v. *Vanover,* Record No. 930604, March 19, 1994. In *Mannix,* this Court reversed the judgment of a circuit court and remanded the case to that court for further proceedings even though the issue that was the basis for the reversal was not raised by Patrick Mannix, the appellant, in the circuit court. In *Taylor* v. *Worrell Enters., Inc.,* 242 Va. 219, 409 S.E.2d 136 (1991), this Court ignored a jurisdictional procedural bar and reversed the judgment of the trial court even though a majority believed that the procedural bar was applicable. I fail to understand why the majority treats Buck's appeal, which raises valid and meritorious claims about the Commonwealth's racially discriminatory use of peremptory strikes, differently.

It is perfectly clear to me that the prosecutor exercised his peremptory strikes in a racially discriminatory manner. The prosecutor removed Constance T. Bowen, a 28-year-old African-American female, from the venire purportedly because she was young and had no children. However, the prosecutor did not remove from the venire a Caucasian female, Sonya T. Burley, who was 23 years old and had no children. The prosecutor's explanation here is a classic example of a pretextual reason advanced to conceal blatant racial discrimination. The prosecutor removed Ms. Bowen from the venire solely because of the color of her skin.

The prosecutor stated that he exercised his peremptory strike to remove Richard T. Wright because: he was wearing a jacket bearing the name Virginia State University (an historically African-American institution of higher learning); he allegedly had a Petersburg address; and Petersburg allegedly has "a significant drug problem." As stated above, the prosecutor said, "[b]ased on his [Wright's] appearance and the address location, I thought that he would be tolerant of this type of offense."

This explanation is also clearly pretextual. First, this case was tried in Chesterfield County and any lawyer or judge would know that residents of Petersburg would not be permitted to serve on a jury in Chesterfield County. Furthermore, the record shows that Wright had a Richmond mailing address.

Secondly, and more troublesome, the prosecutor's statements insinuate that African-Americans are more tolerant of drug-related criminal offenses than other Americans. The prosecutor's statements give credence to, and perpetuate, the odious stereotype that African-Americans are more tolerant of crime than other Americans. According to the Commonwealth, Wright is more tolerant of drug-related crimes because he resides in Petersburg, a city with a majority African-American population.* The prosecutor's description of Wright as a resident of Petersburg is a thinly veiled reference to race and thereby insinuates that African-Americans are more tolerant of drug-related criminal offenses than other Americans.

Clearly, the prosecutor was concerned about the racial composition of the jury. The prosecutor pointed out "that there were a total of three blacks on the jury [and] [t]he Commonwealth struck only two, leaving on the jury [another African-American]." The prosecutor wanted to remove African-Americans from the venire, but, mindful of *Batson,* he

---

* There are approximately 10,194 Caucasians and 27,688 African-Americans residing in Petersburg. Virginia Statistical Abstract 523 (1992-93 ed.)

decided to retain one African-American venireman in order to avoid the appearance of impropriety.

Judges and lawyers must learn that the racially discriminatory use of peremptory strikes to remove African-Americans from the venire damages the integrity of the judiciary and undermines public confidence in courts that are supposed to render justice to all citizens, irrespective of wealth, race, gender, religion, or national origin. The judiciary occupies a special position in our democracy because the judiciary is the branch of government that must insure that the constitutional rights of all citizens, irrespective of race, gender, religion, or national origin, are vindicated. As the Supreme Court stated in *Edmonson* v. *Leesville Concrete Co., Inc.,* 500 U.S. 614, ___, 111 S.Ct. 2077, 2087 (1991):

> Race discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality.

The majority's opinion, in this instance, permits the Commonwealth to subject African-American veniremen to invidious racial discrimination, thereby depriving these citizens of their right to participate fully in our democracy.