COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Elder and Senior Judge Cole
Argued by teleconference


ROGER KYLE DAVIS, S/K/A
 ROGER KYLE DAVIS, SR.

                                    MEMORANDUM OPINION* BY
v.         Record No. 2970-96-3      JUDGE LARRY G. ELDER
                                       DECEMBER 9, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                     Mosby G. Perrow, III, Judge

            David D. Embrey for appellant.

            Kathleen B. Martin, Assistant Attorney
            General (Richard Cullen, Attorney General, on
            brief), for appellee.


     Roger Kyle Davis (appellant) appeals his convictions of two

counts of robbery, four counts of abduction, and six counts of

using a firearm in the commission of a felony.  He contends that

the trial court erred when it (1) ruled that the Commonwealth's

peremptory strikes of African-Americans from the jury panel did

not violate the Equal Protection Clause and (2) granted the

Commonwealth's request to instruct the jury regarding flight as

evidence of guilt.  For the reasons that follow, we affirm.

                                I.
                EQUAL PROTECTION OBJECTION

           TO THE COMMONWEALTH'S PEREMPTORY STRIKES

     The Equal Protection Clause prohibits the parties in a

criminal proceeding from using peremptory challenges to strike

_____
     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

individual prospective jurors from a jury panel "solely on account of their race." Batson v. Kentucky, 476 U.S. 79, 89, 96, 106 S. Ct. 1712, 1719, 1723, 90 L.Ed.2d 69 (1986); see also Georgia v. McCollum, 505 U.S. 42, 55, 112 S. Ct. 2348, 2357, 120 L.Ed.2d 33 (1992). When one party objects to the other party's peremptory challenges on equal protection grounds, the trial court employs a three-step process to determine if a "Batson violation" has occurred. See Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770-71, 131 L.Ed.2d 834 (1995); see also Buck v. Commonwealth, 247 Va. 449, 450-51, 443 S.E.2d 414, 415 (1994). First, the opponent of a peremptory challenge must establish a prima facie case of racial discrimination, i.e., "that [the other party] has exercised peremptory challenges on the basis of race." Hernandez v. New York, 500 U.S. 352, 358, 111 S. Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion); see also Purkett, 514 U.S. at 767, 115 S. Ct. at 1770; Buck, 247 Va. at 450-51, 443 S.E.2d at 415.

Second, if a prima facie case is established, "the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation." Purkett, 514 U.S. at 767, 115 S. Ct. at 1770; see also Buck, 247 Va. at 451, 443 S.E.2d at 415. In order to satisfy step two of the three-step Batson inquiry, the striking party's explanation need only be race-neutral and need not be either sensible or "related to the particular case to be tried." Purkett, 514 U.S. at 767-69, 115 S. Ct. at 1771 (also

stating that the prosecutor's race-neutral explanation satisfies step two even if it is unpersuasive, "silly or superstitious" or "implausible or fantastic").

> "At this [second] step of the inquiry, the issue is the facial validity of the . . . explanation [of the person who exercised the strike]. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

Purkett, 514 U.S. at 768, 115 S. Ct. at 1771 (quoting Hernandez, 500 U.S. at 360, 111 S. Ct. at 1866 (plurality opinion); see also id. at 374, 111 S. Ct. at 1874 (O'Connor, J., concurring in judgment)).

Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." Purkett, 514 U.S. at 767, 115 S. Ct. at 1770-71; see also Buck, 247 Va. at 451, 443 S.E.2d at 415. The opponent of the strike always bears the burden of proving that it was the result of purposeful discrimination, and the intent of the striking party may be established by circumstantial evidence. See Purkett, 514 U.S. at 768, 115 S. Ct. at 1771; Batson, 476 U.S. at 93, 106 S. Ct. at 1721.

Whether or not a party exercised a peremptory strike of a juror with a discriminatory intent is a question of fact. See

Batson, 476 U.S. at 98 n.21, 106 S. Ct. at 1724 n.21; see also Barksdale v. Commonwealth, 17 Va. App. 456, 460, 438 S.E.2d 761, 763 (1993) (en banc). As such, this factual finding is entitled to "great deference" and will not be disturbed unless clearly erroneous. Batson, 476 U.S. at 98 n.21, 106 S. Ct. at 1724 n.21; Hernandez, 500 U.S. at 364-65, 369, 111 S. Ct. at 1868-69, 1871; id. at 372, 111 S. Ct. at 1873 (O'Connor, J., concurring in judgment) (agreeing with the standard of review set forth in the plurality opinion); see also Buck, 247 Va. at 451, 443 S.E.2d at 415; Barksdale, 17 Va. App. at 460, 438 S.E.2d at 763-64.

We hold that the trial court's ruling that the Commonwealth's peremptory strikes were not the result of purposeful racial discrimination was not clearly erroneous. Because the Commonwealth offered its reasons for its strikes, we need not consider whether appellant established a prima facie case of discrimination. See Buck, 247 Va. at 451, 443 S.E.2d at 415; Faison v. Hudson, 243 Va. 397, 402, 417 S.E.2d 305, 308 (1992). In addition, the record supports the trial court's conclusion that the Commonwealth's explanation for its strikes was race-neutral. The Commonwealth's attorney stated that she struck the three African-Americans from the panel because they had prior experience with the criminal justice system in Lynchburg that might have fostered a bias against the Commonwealth. Her explanation did not indicate that race played any part in her decision to strike these particular jurors. In

fact all individuals with prior criminal charges or convictions were stricken, including one white male. Cf. Carter v. Commonwealth, 16 Va. App. 118, 124, 428 S.E.2d 34, 40 (1993) (holding that striking a juror because the Commonwealth's attorney's office had previously prosecuted some of her relatives was a race-neutral explanation). Finally, the trial court's conclusion that the Commonwealth's peremptory strikes were not based on race was supported by credible evidence, namely the Commonwealth's attorney's explanation for her strikes. After personally observing the proceedings, the trial court determined that the Commonwealth's attorney's explanation was credible, and the record does not indicate that this determination was clearly erroneous. See Barksdale, 17 Va. App. at 459-60, 438 S.E.2d at 764 (stating that "evaluation of the . . . state of mind [of the party attempting to offer a race-neutral explanation for a peremptory strike] based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" (citation omitted)).

## II.

### JURY INSTRUCTION REGARDING FLIGHT AS EVIDENCE OF GUILT

Appellant contends that the trial court erred when it granted the Commonwealth's request to instruct the jury regarding flight as evidence of guilt. He argues that the wording of the instruction was confusing and prejudicial and that the record did not contain sufficient evidence of flight to warrant giving the

instruction.  We disagree.

Initially, we hold that Rule 5A:18 bars us from considering appellant's argument regarding the wording of the trial court's instruction on flight.  Appellant argues that the instruction was improper because it did not expressly state that evidence of flight does not create a presumption of guilt.  However, the record indicates that appellant did not object to the Commonwealth's instruction on this ground before the trial court, and we will not consider this argument for the first time on appeal.

Next we hold that the evidence was sufficient to support the trial court's decision to instruct the jury on flight as evidence of guilt.  "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).  "'Both the Commonwealth and the defendant are entitled to appropriate instructions to the jury of the law applicable to each version of the case, provided such instructions are based upon the evidence adduced.'"  Stewart v. Commonwealth, 10 Va. App. 563, 570, 394 S.E.2d 509, 514 (1990) (quoting Simms v. Commonwealth, 2 Va. App. 614, 616, 346 S.E.2d 734, 735 (1986)).  "The evidence to support an instruction 'must be more than a scintilla.'"  Frye v. Commonwealth, 231 Va. 370,

388, 345 S.E.2d 267, 280 (1986). When determining whether sufficient evidence warranted a particular instruction, we view the evidence in the light most favorable to the party offering the instruction. See Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991).

It is well established that "[f]light following the commission of a crime is evidence of guilt, and the jury may be so instructed." Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996) (citing Boykins v. Commonwealth, 210 Va. 309, 313–14, 170 S.E.2d 771, 774 (1969); Carson v. Commonwealth, 188 Va. 398, 408, 49 S.E.2d 704, 708 (1948)), cert. denied, U.S. ___, 117 S. Ct. 972, 136 L.Ed.2d 856 (1997).

> Flight is not limited to physically leaving a jurisdiction for an extended period, but includes the taking of any action, even of short duration, intended to disguise one's identity and distance oneself from the crime.

Id. at 93–94, 472 S.E.2d at 271 (citing Edmondson v. Commonwealth, 248 Va. 388, 390–91, 448 S.E.2d 635, 637 (1994)).

When viewed in the light most favorable to the Commonwealth, "more than a scintilla" of evidence supported its theory that appellant took action to disguise his identity and distance himself from the robbery on the night of the crime. Woods testified that appellant wore two sets of clothes when he committed the robbery and that he removed the outer layer of clothes after leaving the crime scene "to elude the policemen." In addition, the testimony of Woods and Investigator Adams

–7–

indicated that, when the police arrived at the residence of appellant's wife later that night, appellant prevented his wife from answering the door by choking her.

For the foregoing reasons, we affirm the convictions of two counts of robbery, four counts of abduction, and six counts of using a firearm in the commission of a felony.

<u>Affirmed</u>.