COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Raphael and Frucci
Argued at Arlington, Virginia

KEVIN NATHAN METTINGER

MEMORANDUM OPINION* BY
v.      Record No. 1718-23-4      JUDGE STEVEN C. FRUCCI
AUGUST 27, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Matthew P. Snow, Judge

Ryan D. Ruzic, Public Defender, for appellant.

Katherine Quinlan Adelfio, Senior Assistant Attorney General
(Jason S. Miyares, Attorney General, on brief), for appellee.

Following a jury trial, Kevin Nathan Mettinger was convicted of two counts of carnal knowledge of a child and two counts of indecent liberties with a child by a custodian or supervisor. The circuit court sentenced Mettinger to 30 years of imprisonment with 20 of those years suspended. On appeal, Mettinger argues that the circuit court erred in overruling his objections to certain evidence and that the evidence was insufficient to support his convictions. Finding no error, we affirm the circuit court's judgment.

I. BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

In 2019, when S.H.[1] was entering the seventh grade, his parents contacted Mettinger about tutoring him in math. S.H.'s parents were well acquainted with Mettinger from previous tutoring programs that S.H. had attended. Mettinger agreed and, until the COVID-19 pandemic began, tutored S.H. at his home twice per week.

Mettinger tutored S.H. online during the pandemic, but he resumed in-person sessions with S.H. in March of 2021. Often, Mettinger would pick up S.H. from his bus stop after school and drive him to S.H's house for the tutoring sessions. S.H. was then 14 years old, in the eighth grade, and an "innocent and trusting" child. S.H.'s parents trusted Mettinger "absolutely" and considered him "a part of [the] family."

After a tutoring session in May 2021, Mettinger touched S.H.'s leg while they were watching television together. S.H. fell asleep, but, when he awakened, Mettinger was touching his buttocks. S.H. thought that Mettinger had done this intentionally and that it was "weird."

In June 2021, Mettinger arranged with S.H.'s parents for him to help with cleaning chores at Mettinger's house. On four occasions that month—June 10, 15, 22, and 24—Mettinger picked up S.H. at his house for the agreed cleaning sessions and drove him home afterward.[2]

On June 10, 2021, after arriving at Mettinger's house and plugging in his phone, S.H. turned around to see Mettinger without his pants or underwear. At Mettinger's instruction, S.H. removed

---

[1] We use initials, rather than names, to better protect the privacy of the witnesses mentioned in this opinion.

[2] In a text message to S.H.'s mother, after the first session on June 10, 2021, Mettinger mentioned that he would be late bringing S.H. home because "a contractor stopped by to talk . . . about an electrical job in [his] basement." On June 15, 2021, Mettinger thanked S.H.'s mother for loaning him a "great worker." Mettinger asked her for S.H.'s help on June 22 and on June 24, 2021.

his own pants. Sitting beside S.H., and using a flat hand, Mettinger stroked S.H.'s penis outside his underwear. The touching lasted for an hour, until an alarm on Mettinger's phone sounded. Mettinger and S.H. put on their clothes again and began cleaning. During a "break," Mettinger again had S.H. remove his pants and rubbed S.H.'s penis for an hour. After several hours of cleaning and that "break," Mettinger drove S.H. home.

On June 15, 2021, when S.H. arrived at Mettinger's home to clean, Mettinger immediately removed his own pants and then removed S.H.'s pants and underwear. Mettinger touched S.H.'s penis, masturbating him. Mettinger then ordered S.H. to "sit on his face" to "eat him out." With Mettinger laying on the couch, he used his lips and tongue to touch S.H.'s anus. At the same time, Mettinger had S.H. touch his penis until Mettinger ejaculated. S.H. observed that Mettinger's penis was unusual in that it "came out" of a "hole," resembling an "innie belly button." Mettinger took S.H. home after cleaning for a while.

On June 22, 2021, while at Mettinger's home, Mettinger again had S.H. "sit on his face." The sexual assault ended when the timer on Mettinger's phone sounded.

On June 24, 2021, S.H. went to Mettinger's house after they went to the Frost Diner together. Along with having S.H. "sit on his face," Mettinger suggested "edging" S.H. Using a cupped hand, Mettinger rubbed S.H.'s penis to the point of orgasm, stopped, and then started it again. Eventually, S.H. ejaculated into Mettinger's hand. Mettinger tasted the ejaculate and said it was "sweet." Mettinger "ate him out" again and licked his feet.

S.H. did not report the sexual abuse because Mettinger told him that he should not. Mettinger said that "he could go to jail and that's where bad people go." In addition, S.H. continued to return to Mettinger's house in June of 2021 because he wanted to earn the money Mettinger paid him for cleaning. As for his sexual orientation, Mettinger said that he was "gay" and that he could be S.H.'s "mentor." Mettinger also said he wanted to have sex with S.H. when he turned 18.

- 3 -

On June 26, 2021, after discussing the abuse with his good friend, S.H. approached his parents. S.H. reported that Mettinger had sexually assaulted him, and S.H.'s parents called the police.

The police went to Mettinger's home with a search warrant on June 29, 2021; he was naked when the police arrived. In a conversation with the police, Mettinger said that he knew S.H. and that S.H. was 14 years old. Mettinger stated that he had paid S.H. to help clean the house. Mettinger said that during the sessions he and S.H. would work and "take breaks." At first, Mettinger lied about the location of his phone, and the police could not find it. But after the police advised that they would not leave without the phone, Mettinger led them to where it was hidden in a doorway to the basement.

As Exhibit 12, the Commonwealth introduced text messages exchanged by Mettinger and Jeremy Wilk, a home contractor, from April 8 to June 29, 2021. In the messages, Mettinger expressed frustration with the contractor's delay in getting to and completing some projects at Mettinger's home. On June 6, 2021, Mettinger said he would leave the door of the house open so Wilk could get in to work anytime. Mettinger arranged for Wilk to come to the house to plan the work on June 10, 2021. Mettinger mentioned that he had a "kid" coming to help with some house cleaning and that he was 14 years old. On June 14, 2021, Mettinger asked to rearrange the contractor's schedule to accommodate his house cleaning session for the next day. Mettinger also asked the contractor to reschedule work at the house on June 22 and June 24, 2021.

At trial, over Mettinger's objection, the circuit court admitted three nude photographs of Mettinger as Commonwealth's Exhibit 9. The Commonwealth asserted that the photos showed that Mettinger had a "buried," or "inverted," penis, as S.H. had described in his testimony. The circuit court ruled that the probative value of the photographs outweighed any unfair prejudice, overruled the objection, and admitted them.

## II. ANALYSIS

A. *The circuit court did not abuse its discretion in admitting Commonwealth's Exhibits 9 and 12.*

Citing principles relating to the relevance and probative value of evidence, Mettinger contends that the circuit court erred in admitting Commonwealth's Exhibits 9 and 12. "The manner in which a trial is 'conduct[ed] . . . is committed to the trial judge's discretion.'" *Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019) (alterations in original) (quoting *Breeden v. Commonwealth*, 43 Va. App. 169, 185 (2004)). "A 'circuit court's decision to admit or exclude evidence' is also reviewed 'under an abuse of discretion standard.'" *Id.* (quoting *Herndon v. Commonwealth*, 280 Va. 138, 143 (2010)). A circuit court "can abuse its discretion in three ways: (1) by failing to consider a relevant factor that should have been given significant weight, (2) by considering and giving significant weight to an irrelevant or improper factor, and (3) when the . . . court, while weighing 'all proper factors,' commits a clear error of judgment." *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013)). "In evaluating whether a trial court abused its discretion . . . , 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports [that] action.'" *Hicks*, 71 Va. App. at 270 (alterations in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

### Commonwealth's Exhibit 12

Mettinger argues that the circuit court erred in admitting Commonwealth's Exhibit 12, the text messages between him and Wilk. He maintains that the exhibit was irrelevant. Evidence "is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case [and] . . . material if it relates to a matter properly at issue in the case." *Castillo v.*

*Commonwealth*, 70 Va. App. 394, 462 (2019) (alterations in original) (quoting *Cousins v. Commonwealth*, 56 Va. App. 257, 271 (2010)); *see also* Va. R. Evid. 2:401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence"). "All relevant evidence is admissible" unless otherwise provided by statute, rule, or evidentiary principle. Va. R. Evid. 2:402.

To establish that Mettinger violated Code § 18.2-370.1, as charged in the indictments, the Commonwealth had to prove that S.H. was under the age of 18. *See* Code § 18.2-370.1(A) (requiring, among other things, that the victim was under the age of 18 for a conviction of taking indecent liberties). In one of the messages to the contractor, Mettinger mentioned that his cleaning helper was 14. Thus, the text message about S.H.'s age tended to prove Mettinger's guilt of taking indecent liberties under Code § 18.2-370.1.

In addition, the tenor of the messages conveyed that Mettinger was displeased and frustrated by the contractor's failure to come to his house and complete projects promptly. But despite his stated wish to have the projects completed, on the dates that S.H. was scheduled to help Mettinger clean at the house, Mettinger postponed the contractor's visits. Thus, the messages tended to show Mettinger's desire to hide his criminal conduct with the child and his consciousness of his guilt. Commonwealth's Exhibit 12 was therefore relevant to issues in the case, and the circuit court did not abuse its discretion in admitting it.

<u>Commonwealth's Exhibit 9</u>

Mettinger argues that the circuit court erred in admitting Commonwealth's Exhibit 9, the photographs showing his genitalia. He maintains that, even if relevant, the photographs were unduly prejudicial.

Under Virginia Rule of Evidence 2:403(a)(i), relevant evidence may be excluded if "the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice . . . ." "All evidence tending to prove guilt is prejudicial to an accused, but the mere fact that such evidence is powerful because it accurately depicts the gravity and atrociousness of the crime or the callous nature of the defendant does not thereby render it inadmissible." *Powell v. Commonwealth*, 267 Va. 107, 141 (2004). A circuit court must determine whether "the probative value of the evidence [is] substantially outweighed by . . . the danger of *unfair* prejudice." *Lee v. Spoden*, 290 Va. 235, 251 (2015) (second alteration in original). To be considered "unfairly prejudicial," evidence must "inflame the passions of the trier of fact, or . . . invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* "It is well-settled that '[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the circuit court.'" *Walker v. Commonwealth*, 302 Va. 304, 320 (2023) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008) (alteration in original)). Notably, "the mere fact that evidence is highly prejudicial to a party's claim or defense is not a proper consideration in applying the balancing test."[3] *Lee*, 290 Va. at 252.

In the case at hand, the photographs of Mettinger revealed abnormality in the structure of his genitalia. S.H. testified that he saw Mettinger's penis during the sexual abuse and that it was

---

[3] Due to the strength of the evidence in showing guilt, direct evidence, such as eyewitness testimony, can often be *highly* prejudicial to a party's claim or defense, but it "is rarely subject to exclusion on the ground that it would be unduly prejudicial." *Powell*, 267 Va. at 141. "The requirement under Rule 2:403 that *only 'unfair' prejudice* may be considered reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party." *Lee*, 290 Va. at 251 (emphasis added) (internal citations omitted). As mentioned above, "unfair prejudice" relates "to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). As such, the proper consideration is not how highly prejudicial the evidence, but how unfair or how much it has "an undue tendency to suggest decision on an improper basis." *See id.*

unusual in appearance. S.H. said that Mettinger's penis extended from "a hole" and resembled an "innie belly button." From viewing the photographs of Mettinger's body, the jury could conclude that S.H. had seen Mettinger's penis and that S.H's description was accurate, thus enforcing the credibility of his testimony. While the evidence is "highly" prejudicial because it drives home the victim's description of Mettinger's genitalia, it strains credulity to find how such evidence could be "unfair." Certainly, such evidence is embarrassing, but it's far from the type of evidence that could stir emotions within a jury and lead them to convict for a reason other than the evidence presented relating to the crime. *Lee*, 290 Va. at 252.

"Given the deference we accord to trial judges in balancing probative value with undue prejudice, we conclude that the circuit court did not abuse its discretion in weighing the probative nature of" the photographs against "any risk of undue prejudice." *Walker*, 302 Va. at 321. We find no abuse of discretion in the circuit court's decision to admit Commonwealth's Exhibit 9.

B. *Mettinger defaulted his claim that S.H. was inherently incredible.*

While not specifically addressing any element of the offenses, Mettinger challenges the sufficiency of the evidence to support his convictions by arguing generally that S.H.'s testimony was inherently incredible and unworthy of belief. The Commonwealth argues that Mettinger did not preserve this issue for appellate review.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the circuit court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). Virginia circuit court judges are a

resilient lot; a specific and timely objection will often result in judicial self-correction by making rulings that protect the litigants from potential error in real time, thereby eliminating even the need for an appeal. *See Brown v. Commonwealth*, 279 Va. 210 (2010). As such, "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Hicks*, 71 Va. App. at 266 (second alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)). Furthermore, "[a] general argument or an abstract reference to the law is not sufficient to preserve an issue [for appellate review]." *Edwards*, 41 Va. App. at 760 (citing *Buck v. Commonwealth*, 247 Va. 449, 452-53 (1994); *Scott v. Commonwealth*, 31 Va. App. 461, 464-65 (2000)).

In this case, in his motion to strike the evidence, Mettinger merely stated "what we have here is basically a 'he said/he said case.'" Pointing out that Mettinger claims a different version of events from S.H. is not the same as arguing that S.H.'s testimony was inherently incredible as a matter of law such that it was "unworthy of belief or that the jury should not be permitted to weigh [S.H.'s] credibility." *Commonwealth v. Bass*, 292 Va. 19, 33 (2016); *see Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022). Accordingly, Mettinger failed to preserve these issues for appellate review. Rule 5A:18. Although there are exceptions to Rule 5A:18, Mettinger has not invoked them, and we do not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*