COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, Frucci and Senior Judge Humphreys

JOHN THOMAS BEY

                                               MEMORANDUM OPINION*

v.      Record No. 0481-23-4                         PER CURIAM
                                                   JUNE 18, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Kathleen M. Uston, Judge

(Robert L. Jenkins, Jr.; Bynum & Jenkins, on brief), for appellant.

(Jason S. Miyares, Attorney General; Lindsay M. Brooker, Assistant
Attorney General, on brief), for appellee.

     A jury convicted John Thomas Bey of two counts of attempted malicious wounding of a law

enforcement officer and one count of maliciously shooting at an occupied, "conspicuously marked

law-enforcement vehicle," in violation of Code §§ 18.2-51.1 and 18.2-154, respectively.[1]  On

appeal, Bey challenges the sufficiency of the evidence supporting his convictions.  After examining

the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary

because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court dismissed a related charge of discharging a firearm on public property
within 1,000 feet of a public school.  The jury also convicted Bey of misdemeanor assault and a
second count of discharging a firearm on public property within 1,000 feet of a public school.
Bey does not challenge those convictions on appeal.

BACKGROUND[2]

On November 23, 2021, Hatem El Nahas was driving on a highway when a truck in the next lane accelerated and unsuccessfully tried to merge ahead of him. Bey, the truck's driver, "honk[ed]" at El Nahas and attempted to ram El Nahas' car with Bey's truck. El Nahas called 911 and tried to drive away, but Bey followed El Nahas and "kept trying to hit [his] car." While stopped at a traffic light, Bey exited his truck and repeatedly struck the driver's side mirror of El Nahas's car, destroying the mirror. Bey then returned to his truck and drove away.

Fearing that Bey would "escape . . . before police arrived," El Nahas followed Bey's truck and provided its license plate number to the 911 dispatcher. During the pursuit, Bey stopped near a high school and exited his truck. He pointed a pistol at El Nahas and shot repeatedly before leaving the area. Unscathed, El Nahas remained in his car and waited for police to arrive. Soon thereafter, officers investigated the incident and obtained arrest warrants for Bey and a search warrant for his house.

Later that day, several officers went to Bey's house to arrest him and search his residence. The officers arrived in marked patrol cars, which they parked in front of Bey's house. Bey locked himself inside the house with his wife and refused to exit. Afterwards, members of the Alexandria Police Department's "SWAT team" arrived in an "armored truck" and parked outside Bey's house about 40 yards from the front entrance. Using the armored truck's "public announcement system," the officers repeatedly identified themselves as police and instructed Bey to surrender. Meanwhile,

---

[2] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

several SWAT officers, wearing uniforms that identified them as police, exited the truck and formed "a perimeter" around the house.

About three hours later, additional officers from a nearby county's SWAT team arrived in a second armored truck and parked in the driveway of Bey's house near the front entrance. The truck was "sage green" and had "Police" written in large black letters on the sides and in a "slightly smaller" print on the hood. There were blue and red emergency lights and a siren mounted on the roof, as well as "spotlights" and a "floodlight." The truck was covered in "half-inch [metal] plating," and the front windshield was made of bullet-resistant "ballistic glass." A 14-foot-long pole used to penetrate doors, known as a "ram," was affixed to the front of the truck. There was a "gas canister" attached to the end of the ram that could "introduce chemical agent[s]" into the house "if needed." The truck's driver, Officer Guckenberg, and front passenger, Lieutenant Boyle, were wearing police uniforms.

For the next several hours, officers in the first armored truck announced their presence and demanded Bey's surrender. The announcements were loud enough that Officer Guckenberg could hear them inside his armored truck 50 yards away. When night fell and efforts to contact Bey failed, Officer Guckenberg and Lieutenant Boyle received orders to "breach" the front entrance. Accordingly, Officer Guckenberg drove his armored truck toward the house until the ram collided with the front door. Gunshots erupted from inside the house, and several bullets hit the truck. As the ram pushed the front door open, Officer Guckenberg saw Bey aiming a rifle at him, leaning around the corner of a wall in the kitchen "toward the back of the house." Guckenberg "ducked" to avoid being shot as Bey continued shooting in his direction. Once the shooting stopped, Guckenberg reversed the truck and drove it away from the house. An officer in the other armored car parked nearby addressed Bey over the public announcement system, "We just want to talk. We are not coming inside." In response, Bey repeatedly yelled, "Why are you here?" and threatened,

"If you fucking come in here, you're gonna have to murder me." Bey then stood in the doorway of the front entrance, unarmed, and yelled, "You have no jurisdiction . . . Murder me . . . It's a time to kill," before returning inside the house and shutting the door. Meanwhile, Bey's wife exited the house through a window and went into police custody.

During the shooting, two bullets struck the front windshield of Guckenberg's armored truck at face-level, directly in front of the driver's seat and front passenger seat where he and Lieutenant Boyle were sitting. Three others struck the driver's side mirror, the driver's side front headlight, and a floodlight on the roof above the driver's seat. Several additional bullets struck the armor plating on the left side of the truck. The "gas canister . . . at the end of the ram" was also damaged from gunfire. None of the officers returned fire.

The next morning, police "introduc[ed] chemical irritants into the home" to force Bey to surrender. As the officers "deploy[ed] gas canisters" through the windows and front door of the residence, they heard more gunshots inside. Without returning fire, officers went inside and arrested Bey.

Police searched the house and found a 12-gauge shotgun, two pistols, and an "AR-15 style" semi-automatic rifle, as well as large quantities of pistol and rifle ammunition. There were thirty-two rifle and nine pistol cartridge casings on the floor, the "vast majority" of which were near the kitchen where Officer Guckenberg had seen Bey aiming his rifle. The kitchen wall was damaged from bullets traveling through it toward the front door. At least ten bullets penetrated the front door, and there were additional "bullet holes" in the wall beside it. There was no evidence of bullets entering the house "from the outside."

A grand jury subsequently indicted Bey for two counts of attempted murder of a law enforcement officer, one count of maliciously shooting at an occupied conspicuously marked law-enforcement vehicle, one count of attempted malicious wounding, and two counts of shooting a

firearm on public property within 1,000 feet of a public high school. At trial, Officer Guckenberg testified that when the ram of his armored truck contacted the front door, Bey initially shot at the truck through the front door and then continued shooting after the ram pushed the door open. Guckenberg acknowledged that it would have been difficult for Bey to see him and Lieutenant Boyle inside the armored truck because the truck's floodlight, spotlights, and front headlights were facing Bey as it approached. Guckenberg also acknowledged that he did not activate his armored truck's emergency lights or siren and that none of the officers warned Bey beforehand that they were preparing to force entry into the house.

After the Commonwealth's case-in-chief, Bey moved to strike, arguing that the evidence was insufficient to prove the charges of the attempted murder of a law enforcement officer because there was no evidence that he specifically intended to shoot Officer Guckenberg and Lieutenant Boyle or that he knew or had reason to know that they were law enforcement officers. Bey also moved to strike any "lesser-included offense[s]" to the extent they required such proof. Additionally, Bey argued that the evidence failed to prove he maliciously shot at an occupied, conspicuously marked law-enforcement vehicle under Code § 18.2-154, because he neither knew, nor should have known, he was "firing upon an occupied vehicle." The trial court denied the motion in relevant part.

Bey's friends, Anthony Lytton and Raymond Anthony Jackson, Jr., each testified that Bey was a "peaceful person" and had no history of violence. Neither knew that Bey possessed the firearms and ammunition found in his house. At the conclusion of the evidence, Bey renewed his motion to strike on the same grounds. The trial court denied the motion.

Before closing arguments, the jury received finding instructions specifying the elements of the charged offenses and their lesser-included offenses. Without objection, the trial court provided Jury Instruction 10, which stated that attempted malicious wounding of a law enforcement officer

was a lesser-included offense of attempted murder of a law enforcement officer.[3]  Relevant here, the jury ultimately convicted Bey of the "lesser-included" offense of attempted malicious wounding of a law enforcement officer on the two counts of attempted murder of a law enforcement officer.  The jury also convicted Bey of maliciously shooting at an occupied, conspicuously marked law enforcement vehicle.  Bey appeals, challenging the sufficiency of the evidence supporting his convictions.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

---

[3] Attempted malicious wounding of a law enforcement officer under Code § 18.2-51.1 is not a lesser-included offense of attempted murder of a law enforcement officer under Code § 18.2-31(6).  *See Hampton v. Commonwealth*, 34 Va. App. 412, 423 (2001) (holding that "malicious wounding is not a lesser-included offense . . . of murder").  Nevertheless, as the parties did not object to Instruction 10, the erroneous instruction is the "law of the case" and "bind[s] the parties . . . and this Court on review."  *Smith v. Commonwealth*, 296 Va. 450, 461 (2018) (quoting *Wintergreen Partners, Inc. v. McGuireWoods, LLP*, 280 Va. 374, 379 (2010)).

I. The evidence was sufficient to support Bey's convictions for attempted malicious wounding of a law enforcement officer.

Code § 18.2-51.1 makes it unlawful for any person to "maliciously cause[] bodily injury to another by any means . . . with intent to maim, disfigure, disable or kill, and knowing or having reason to know that such other person is a law-enforcement officer."  "An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission."  *Holley v. Commonwealth*, 44 Va. App. 228, 234 (2004) (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565-66 (1995)).  Relevant here, Jury Instruction 10 specified that to convict for attempted malicious bodily wounding of a law enforcement officer, the evidence had to establish that "the defendant's intended target was a law enforcement officer."

Bey contends that the evidence failed to prove that he intended to shoot Officer Guckenberg and Lieutenant Boyle and that he knew, or had reason to know, that they were law enforcement officers.  Bey contends that the evidence failed to exclude his reasonable hypothesis of innocence that the armored truck that breached the front door of his residence, not the officers occupying the vehicle, were his intended targets during the shooting.  Additionally, Bey emphasizes that although teams of uniformed police officers "were stationed outside" his house for several hours and repeatedly "announce[d] their presence" before the shooting, there was "no evidence" Bey "actually heard these announcements" or otherwise should have known that "those employing the mechanical device to force entry into the residence were law enforcement."

"Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances, including the 'words or conduct' of the alleged offender.'"  *Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (en banc) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228-29 (2018)), *aff'd*, ___ Va. ___, ___ (Jan. 18, 2024).  Whether a defendant possessed the requisite intent is "a factual question which lies peculiarly within the province of

- 7 -

the [trier of fact]." *Id.* at 343 (alteration in original) (quoting *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994) (en banc)). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "Circumstantial evidence is not viewed in isolation." *Id.* (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Pijor v. Commonwealth*, 294 Va. 502, 512-13 (2017) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Moreover, "[b]y finding the defendant guilty, . . . the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *James v. Commonwealth*, 53 Va. App. 671, 681 (2009) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). That conclusion "is itself a 'question of fact,' subject to deferential appellate review." *Id.*

It is well established that "[a] person is presumed to intend the immediate, direct, and necessary consequences of his voluntary act." *Holley*, 44 Va. App. at 234 (quoting *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977)). "[M]alice may be 'inferred' from the deliberate use of a deadly weapon,'" *Smith v. Commonwealth*, 68 Va. App. 399, 417 (2018) (quoting *Knight v. Commonwealth*, 61 Va. App. 148, 156 (2012)), although that circumstance, alone, is insufficient to prove a defendant's specific intent to maim, disfigure, disable, or kill under Code § 18.2-51.1. *See Banovitch v. Commonwealth*, 196 Va. 210, 216 (1954) (interpreting analogous language in Code § 18.2-51). Nevertheless, a defendant's deliberate use of a firearm, combined with his conduct and statements before and after a shooting, may be sufficient to prove he possessed the requisite intent. *Cuffee v. Commonwealth*, 61 Va. App. 353, 370-71 (2013).

For example, this Court has held that the evidence was sufficient to prove a defendant acted with malice and specifically intended to kill two victims where he repeatedly fired a gun at them following an argument. *Id.* In that case, this Court rejected the defendant's argument that he intended only to target one of the victims given their previous argument and the fact that the defendant deliberately aimed and repeatedly fired toward both victims. *Id.* Similarly, this Court has upheld a defendant's conviction for attempted malicious wounding of a law enforcement officer where he drove his van toward a police officer while fleeing a crime scene. *Holley*, 44 Va. App. at 234. In that instance, this Court noted that the defendant "accelerated the van directly towards [the officer] without making any effort to veer or avoid striking" him and the officer had to "div[e] into his patrol unit" to avoid collision, which negated the defendant's theory that he merely intended to escape. *Id.* at 235.

Here, Bey's conduct and statements before and during the shooting permit a rational trier of fact to conclude that he intended to shoot Officer Guckenberg and Lieutenant Boyle. To begin, the record demonstrates that shortly before the officers confronted him at his residence, Bey repeatedly fired a handgun at a motorist after attempting to force the driver's car off the road by ramming it with his truck. He then left the scene and drove to his house, where he had access to additional firearms and ammunition. When several police officers arrived at the house in marked patrol vehicles and prepared to arrest Bey, he locked himself inside his house and refused to surrender. Those circumstances permit a rational trier of fact to infer that Bey went to his house and locked himself inside so that he could arm himself in anticipation of violently resisting his arrest. *See Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994) (holding that "[t]aking the steps necessary to locate and obtain a weapon further bolsters the inference of malice").

After an armored police truck arrived and parked near the front entrance of Bey's house and several officers wearing police uniforms surrounded Bey's residence, Bey's resistance continued. Indeed, Bey ignored their repeated announcements demanding his surrender and remained inside the house. Soon thereafter, Officer Guckenberg and Lieutenant Boyle, who were wearing police uniforms displaying their badges of authority, arrived in another armored truck and parked in the driveway near the front door of Bey's house. The truck had "Police" written on the sides and hood, blue and red emergency lights and a siren on the roof, and a 14-foot-long "ram" affixed to the front—features that are uncharacteristic of ordinary, civilian vehicles. For the next several hours, officers in the first armored truck addressed Bey over a "public announcement system," repeatedly identifying themselves as police and ordering him to exit the house and surrender.

When Bey continued to disregard their commands, Officer Guckenberg drove the ram of his armored truck through the front door of Bey's house. In response, Bey armed himself with an "AR-15 style" rifle and fired at least ten bullets though the front door toward the truck. When the ram pushed the front door open, Bey aimed his rifle at the officer and continued firing. He fired a total of thirty-two bullets at the armored truck, two striking the front windshield directly facing where Officer Guckenberg and Lieutenant Boyle were sitting in the truck. Several others hit areas near the front windshield. Immediately after the shooting, Bey stood in the front entrance and yelled at the officers statements such as, "[I]t's a time to kill," and that they had no "jurisdiction" to enter his home and arrest him. Those circumstances further support the conclusion that Bey maliciously shot at Officers Guckenberg and Lieutenant Boyle with the specific intent to kill them. *See Cuffee*, 61 Va. App. at 370-71; *Holley*, 44 Va. App. at 234-35.

Moreover, the above evidence overwhelmingly demonstrated that Bey knew, or should have known, that Officer Guckenberg and Lieutenant Boyle were law enforcement officers. This

Court has held that the evidence was sufficient to prove a defendant assaulted two policemen "knowing or having reason to know" they were "law enforcement officers" where both officers were "wearing police uniforms with their badges displayed" when the defendant attacked them and said that they were not "real police." *Blankenship v. Commonwealth*, 71 Va. App. 608, 617-22 (2020) (interpreting Code § 18.2-57(C)). Given the conspicuous presence of the teams of uniformed police officers surrounding Bey's residence and their repeated announcements ordering him to surrender, combined with the express labeling and unique features of Guckenberg's armored truck that identified it as a police vehicle, the evidence supports the conclusion that Bey knew that Guckenberg and Boyle were police. Although none of the officers warned Bey before Officer Guckenberg and Lieutenant Boyle rammed the front door of the house with their armored truck, and Bey's view of the officers may have been partially obscured by the vehicle's lights and the front door during the shooting, those circumstances do not render the evidence insufficient as a matter of law. Rather, as noted, the balance of the evidence demonstrated that Bey either knew or should have known that the armored truck's occupants were law enforcement officers.

In sum, the evidence sufficed to prove that Bey deliberately shot at Officer Guckenberg and Lieutenant Boyle, knowing, or having reason to know, that they were law enforcement officers. Accordingly, the trial court did not err by denying Bey's motions to strike.

> II. Bey's argument challenging his conviction for maliciously shooting at an occupied and conspicuously marked law-enforcement vehicle is waived.

It is a Class 4 felony for anyone to "maliciously shoot[] at . . . any motor vehicle . . . occupied by one or more persons, whereby the life of any person . . . in such motor vehicle . . . may be put in peril." Code § 18.2-154. "If any such act is committed unlawfully, but not maliciously, the person so offending is guilty of a Class 6 felony." *Id.* Additionally, the third paragraph of Code § 18.2-154 states that "[i]f any person commits a violation of this section by

- 11 -

maliciously or unlawfully shooting, with a firearm, at a conspicuously marked law-enforcement . . . vehicle, the sentence imposed shall include a mandatory minimum term of imprisonment of one year to be served consecutively with any other sentence." *Id.*

No case addresses the mens rea required for conviction under the third paragraph of Code § 18.2-154. Regardless, Bey contends that he could not be convicted of violating that provision because there was no evidence that he knew that the armored police truck he shot was a "conspicuously marked law-enforcement" vehicle.

We do not consider Bey's argument because he failed to preserve it for appellate review. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). Accordingly, "this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). Moreover, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)). "A general argument or an abstract reference to the law is not sufficient to preserve an issue." *Id.* at 760 (citing *Buck v. Commonwealth*, 247 Va. 449, 452-53 (1994)).

During his motions to strike, Bey argued that the evidence was insufficient to support his conviction under Code § 18.2-154 because there was no evidence that he knowingly "fir[ed]

upon an occupied vehicle." He did not contend that the statute also required proof that he knew that Officer Guckenberg's armored police truck was a "conspicuously marked law-enforcement" vehicle. Nor did he raise that argument in a motion to set aside the jury's verdicts. *See Commonwealth v. Bass*, 292 Va. 19, 33 (2016) (holding that a defendant in a jury trial preserves his sufficiency arguments by raising them in a motion to strike after all the evidence or a motion to set aside the verdicts). Accordingly, that specific argument is waived. *Id.*; Rule 5A:18. Bey does not invoke Rule 5A:18's good cause or ends of justice exceptions, and "we do not consider them sua sponte." *Spanos v. Taylor*, 76 Va. App. 810, 828 (2023) (quoting *Edwards*, 41 Va. App. at 761).

Additionally, Bey's argument is waived because his brief fails to comply with Rule 5A:20(e). An opening brief must contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). Rule 5A:20(e) requires an appellant "to present [this Court] with legal authority to support [his] contention" that the trial court erred. *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008)). Thus, "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* (quoting *Sneed v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.,* 301 S.W.3d 603, 615 (Tenn. 2010)). In two sentences in his brief, Bey summarily concludes that Code § 18.2-154 required proof that he *knew* that the armored truck he shot was a "conspicuously marked law-enforcement" vehicle. However, Bey does not provide any legal argument supporting that conclusion or otherwise demonstrate that the statute contains that scienter requirement. Rather, Bey's brief includes nothing more than the bare language of the statute to support his claim. His failure to include citations to legal authority and principles in his brief leaves this Court without a "proper lens through which to view . . . [his] assignment of

error," especially given the lack of any case law construing the relevant portion of Code

§ 18.2-154. *Bagley v. Commonwealth*, 73 Va. App. 1, 29 (2021). Under these circumstances,

Bey's failure to comply with Rule 5A:20(e) is "significant," and his argument is waived.

*Bartley*, 67 Va. App. at 745.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*